71 164
85 119
71 164
88 305
71 164
93 105
93 395

GEORGE W. SMITH vs. SANFORD C. CHASE.

Somerset. Opinion April 12, 1880.

*Attachment — exceptions under R. S., c. 81, § 59. " Cart or truck wagon."*
*Peddler's cart.*

A peddler's wagon designed to be used in trade from place to place, with the body hung upon three elliptic steel springs, with drawer behind and doors at the sides, and a railing around the top, and dasher in front, is not a vehicle which is exempted from attachment and execution under R. S., c. 81, § 59, clause 9, which exempts "one cart or truck-wagon."

ON EXCEPTIONS.

REPLEVIN of one truck wagon, "to wit, one peddle cart." Writ dated June 14, 1878. The facts sufficiently appear in the opinion. The case was submitted to the presiding judge, who held as a matter of law, that the property was a truck wagon, and exempt from attachment by the statute. To this ruling, the defendant alleged and filed exceptions.

*James Wright*, for the plaintiff, cited : Webster's and Worcester's unabridged dictionaries ; R. S., c. 81, § 59 ; 48 Maine, 410 ; 53 Maine, 401 ; 49 Maine, 34 ; 56 Maine, 34 ; 56 Maine, 538.

*Folsom & Merrill*, for the defendant, cited : 6 Dane Ab. c. 196, art. 5 ; stat. 1821, c. 95, § 1 ; stat. 1838, c. 307 ; stat. 1847, c. 32 ; stat. 1859, c. 74 ; stat. 1867, c. 102, § 4 ; R. S., c. 81, § 59 ; c. 1, § 4, cl. 1.

BARROWS, J. The vehicle here replevied, is claimed by the plaintiff under a mortgage, from Frank E. Swanton, dated May 29, 1878, in which it is described as "a one horse peddle cart." Defendant justifies the taking of the same, May 25, 1878, (four days before the plaintiff's title accrued) as the property of said Swanton, by virtue of a writ of attachment, in his hands as sheriff of the county.

The justification must prevail, unless the vehicle was exempt from attachment under the 9th clause of § 59, c. 81, R. S., which places upon the list of exempted articles, "one plow, one cart or truck wagon, one harrow, one yoke with bows, ring and staples, two chains, one ox sled, and one mowing machine."

There was no question of fact as to the description of the vehicle. "It was a light one horse peddler's wagon, with four wheels, the body hung upon three elliptic steel springs, with drawers behind, and doors at sides, with railing around the top, and dasher in front." Was it "a cart, or truck wagon," within the meaning of the provision above referred to? The plaintiff claims that it comes directly within the definition of a truck wagon, which he says is a wagon used for the transportation and exchange or barter of commodities, deriving truck, from the French verb *troquer*, "to exchange, to barter, to truck." Defendant derives it from the Greek . . . "a wheel," from which come the English truck and trucks, signifying "a low carriage for carrying goods, stone," &c. Both fortify their positions by Webster's dictionary, an acknowledged authority; but this does not bring us perceptibly nearer a solution of the question. What did the legislature intend to exempt as "a cart or truck wagon?" The fundamental rule in the construction of statutes, is that they are to be construed according to the intention of the legislature. Dane's abridgment, vol. 6, c. 196, art. 5, § 2. Another is, that "all the statutes on one subject are to be viewed as one;" *Ibid.* c. 196, art. 5, § 16; *Merrill* v. *Crossman*, 68 Maine, 412. Such a construction must prevail as will form a consistent and harmonious whole, instead of an incongruous, arbitrary and exceptional conglomeration. The context, and the course of legislation, as matter of history often throw light upon the meaning and application of terms used in the statutes.

Clause 9 had its origin in laws of 1838, c. 307, entitled "an act, exempting farming tools and other articles from attachment," &c., by which one plough of the value of $10, one cart of the value of $25, one harrow of the value of $5, and all necessary hand farming tools, of the value of $10, together with one cooking stove of the value of $35, were exempted. In 1839, by c. 413, there was a limited exemption of bulls, steers or oxen, to go with the "cart." These exemptions were continued in the revision of 1841, and in 1847, c. 11, were supplemented by the exemption of an ox yoke with its appurtenances, all of the value of $3, two chains, each of the value of $3, and an ox sled of the

value of $10. And the same year by c. 32, the limited exemption of one pair of oxen, steers or bulls was made general, and, horse labor having by that time come into greater use upon farms, "one or two horses, instead of oxen," not exceeding the value of $100, were made "subject to the same exemption." These exemptions went into the revision of 1857.

In c. 74, 1859, came an exemption, in favor of any one owning one or two horses exempt from attachment, of a harness for each of said horses, not exceeding $12 in value, and a horse sled not exceeding $15 in value, in case he did not at the same time own an ox sled, with the privilege of electing which should be exempted, if he did. Finally, in 1867, when nominal values had been greatly enhanced by reason of a plethora in the currency, c. 102, of the laws of that year, introduced a pair of mules among the exempted articles as an alternative for the one or two horses, and at the same time provided for the exemption of a truck wagon in place of the cart, and, in view of the change in nominal values, struck out the small pecuniary limitations as to most of them, or, (as to two or three of the exempted articles) increased them to correspond with the exaggerated prices then prevailing.

And so the exemptions stand—a yoke of oxen, or one or two horses, not exceeding a certain value, or a pair of mules—an ox sled, or a horse sled—a cart, or a truck wagon—the vehicles intended to correspond with the animals used, and all designed as aids to labor rather than traffic.

Looking at the character of all the articles exempted, and their apparent purposes, and the order of their introduction into the list, some of them as substitutes for articles previously exempted, we do not believe that the legislature intended to exempt, under the term truck wagon, one of those movable stores that traverse the State on wheels or runners, covered it may be with the meretricious adornments of carving and gilding, as well as paint and varnish, but rather one of those vehicles used most commonly for farm work or heavy hauling, with horses or mules, as a "cart" is with oxen.

Under the plaintiff's definition, we should be required to hold as exempted, not unfrequently, a vehicle exceeding in value the homestead, which the law allows the poor man to retain only provided he records his claim for that purpose in the county records before contracting debt, and as much unlike the original "one cart of the value of $25," as a state coach with outriders.

If the legislature had designed to exempt one of these vehicles of trade and commerce, in addition to those more appropriate for ordinary labor, it is reasonable to suppose that they would have done so under some more pertinent description than that of truck wagon, and would have affixed some limitation as to kind and cost.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH, LIBBEY and SYMONDS, JJ., concurred.