*Plaintiff's nonsuit.*

---

FRANCIS KEEFE, Petitioner for Mandamus,

*vs.*

FRANK E. DONNELL.

York. Opinion November 25, 1898.

*Elections. Ballots and Inspection. Town Clerk. Mandamus. Stat. 1891, c. 102, § 25; 1893, c. 267; R. S., c. 102, § 16.*

At the State election of 1898 the petitioner's name was on the official ballots as a candidate for representative to the legislature. According to "the result declared and recorded" he failed of an election, but he believed that if the ballots had been properly sorted and counted, he would appear to be elected. The petitioner thereupon applied to the town clerk for permission to inspect the ballots, they having been delivered to him sealed in a package, as provided by the statute, "to be preserved by him as a public record for six months." This application to the town clerk was made before the six months had elapsed and was refused.

Upon a petition for mandamus, *held;* that the petitioner has a legal right to inspect the ballots, a right which the town clerk must accord to him and that the mandamus must be made peremptory.

*Also;* that neither the petitioner, nor any one in his behalf, can sort or count, or in any way handle or even touch the ballots. He can inspect them and they must be exposed to his inspection, but they are all the while in the custody of the clerk and he is responsible for them.

Such inspection must be in the presence of the clerk who can make and insist on such regulations or restrictions consistent with the right of inspection as will secure every ballot, like any other record, from loss, impairment or change in any respect.

The clerk can afterward reseal the package for greater security until inspection is again required by some person interested.

On Exceptions by Defendant.

Petition for mandamus against the respondent, as clerk of the town of Kittery, praying that the petitioner may be allowed to make examination of all the ballots, votes, stickers and check lists in his custody and which were used and unused at the state election held in said Kittery on the 12th day of September, 1898, and at which election the petitioner was supported as a candidate for representative to the legislature from the classed towns of Kittery and Eliot.

The petition alleges, among other things, that the respondent refused to exhibit or allow the examination of said ballots and check lists by the petitioner. The petition having been presented at the September term of the court then in session in York County an order of notice was granted thereon returnable on the fourth day of October, when upon hearing the following alternative writ was issued.

L. S.

STATE OF MAINE.

Supreme Judicial Court.          October 4th, 1898.

FRANCIS KEEFE *vs.* FRANK E. DONNELL.

To Frank E. Donnell, Town Clerk of the town of Kittery, in our County of York,          Greeting :

Whereas, Francis Keefe, of Eliot, in said County of York, was duly nominated at a caucus of the Republican voters of the classed towns of Kittery and Eliot in said County legally holden at said Eliot on the fourth day of August, 1898, for the choice of Representative to the 69th Legislature of the State of Maine from the towns of Kittery and Eliot, as provided by the Resolves of the State of Maine for the year 1891, chapter 118, and,

Whereas, both the certificate of nomination by said caucus for Representative, and the assent thereto by said Francis Keefe were

duly executed and filed with the Secretary of State of the State of Maine, as required by law; and,

· Whereas, Thomas F. Staples, of said Eliot, was a candidate for Representative to said 69th Legislature from said classed towns of Kittery and Eliot, as Independent Republican, he having filed nomination papers as and for such candidacy, as provided by law; and,

Whereas, at said election held on the 12th day of September, 1898, both said Francis Keefe and Thomas F. Staples were voted for as candidates for Representative from the classed towns of Kittery and Eliot to said 69th Legislature, and there were cast and counted for said Francis Keefe, in the town of Eliot, one hundred and thirty-two (132) votes for Representative and in the town of Kittery there were alleged to have been cast and counted for said Keefe one hundred and sixty (160) votes, and there were cast and counted in the town of Eliot for said Thomas F. Staples seventy-eight (78) votes for Representative and there were alleged to have been cast and counted in said town of Kittery two hundred and sixteen (216) votes for said Staples for Representative, and the Town Clerk of the towns of Kittery and Eliot made return as required by law of said votes counted for said candidates for Representative as aforesaid, each for his respective town, to the Secretary of State accordingly; and,

Whereas, it is alleged that at said election in said town of Kittery the election officers of said Kittery then and there, to wit: on the 12th day· of September, 1898, counted for· said Staples for Representative certain and many ballots, to wit: twenty (20) ballots bearing the name of said Staples which were legally defective, and· which should not have been counted for said Staples for Representative under the laws of this State; and it is alleged that at said election held in said. Kittery, the election officers of said Kittery counted for said Thomas F. Staples for Representative, as aforesaid, certain and many loose stickers not attached to any ballots then and there found in the ballot box and enclosed in the ballots, to wit: to the number of fifteen (15) stickers bearing the

name of said Thomas F. Staples, which said stickers were illegally counted for said Staples for Representative aforesaid; and,

Whereas, said Francis Keefe alleges that because of said illegal. and wrongful acts of said election officers of the town of Kittery, to wit: the said counting of said twenty (20) defective and illegal ballots for said Thomas F. Staples for Representative aforesaid, and the said counting of said fifteen (15) not attached stickers bearing the name of said Thomas F. Staples for Representative as aforesaid, said Thomas F. Staples was alleged to have received two hundred and ninety-four (294) votes for Representative as against two hundred and ninety-two (292) votes for said Francis Keefe for Representative in the classed towns of Kittery and Eliot, and that the said Staples thereby received a plurality of votes, to wit: a plurality of two votes over said Francis Keefe and a plurality of votes over all other candidates voted for for Representative in said classed towns of Kittery and Eliot, and that but for said illegal and wrongful acts of said election officer in the said counting of said defective ballots and said not attached stickers, the said Francis Keefe would have received a plurality of votes cast for Representative, as aforesaid, from said classed towns of Kittery and Eliot; and,

Whereas, said Francis Keefe denies that the said Thomas F. Staples was duly and legally elected Representative to the said 69th Legislature from the classed towns of Kittery and Eliot, and contests the alleged election of said Staples as Representative aforesaid, and alleges that he is specially interested in the count made by said election officers of the votes of the town of Kittery and the return of the Town Clerk of the town of Kittery, for Representative, to said Secretary of State, and that he has been specially damaged and wronged thereby; and,

Whereas, the said Francis Keefe, on the 30th day of September, 1898, at said Kittery, at 2.30 o'clock in the afternoon, made demand on Frank E. Donnell, Town Clerk of said Kittery, which said Town Clerk said Donnell legally was and now is, then and there having custody of all the ballots and check lists used at said

election for Representative, as aforesaid, on said 12th day of September, 1898, and of all the unused and cancelled ballots and check lists sealed in packages, as provided by law, which said three classes of ballots include all the ballots returned to said Donnell's possession as Town Clerk aforesaid by the election officers of the town of Kittery, for permission to have access to and examine all of said ballots herein enumerated and the check lists used at said election, which said ballots and check lists then and there were and now are in the custody of said Donnell, as Town Clerk aforesaid, as a public record, as provided by the laws of Maine; and,

Whereas, it was and is the duty of said Frank E. Donnell as Town Clerk aforesaid, to preserve said ballots and check lists as a public record, and as such public record to allow access to and examination of said ballots and check lists by persons having a special interest in the same, yet disregarding his duty in said behalf utterly refused then and there, to wit, on said 30th day of September, 1898, at 2.30 o'clock in the afternoon, at said Kittery, to allow to said Francis Keefe, who had and still has a special interest in the same, access to and examination of said ballots and said check lists for the purposes aforesaid so held in his, said Donnell's possession as a public record, and still refuses so to do, and that because of the refusal of said Donnell, as clerk aforesaid, to allow said Francis Keefe to examine said ballots and check lists, he, the said Keefe, is unable to gain access thereto, and to examine the same, and is unable to protect his legal rights and provide himself with proper and necessary data and facts to enable him to contest the alleged plurality and election of said Thomas F. Staples as Representative aforesaid before the Legislature of this State to be convened at Augusta on the first Wednesday of January, 1899, to his, the said Francis Keefe's great and special damage; and,

Whereas, said Francis Keefe is without remedy at law for said wrongful acts of said Frank E. Donnell, as said Town Clerk of Kittery, in that he, said Donnell, refuses access to and examination of said ballots and check lists by said Keefe for the purposes aforesaid; in contempt of us, and to the no small damage and griev-

ance of him, the said Francis Keefe, as we have been informed from his complaint made to us in that behalf; we therefore, being willing that due and speedy justice be done in this behalf to the said Francis Keefe as it is reasonable, do command you, that immediately after the receipt of this our writ you do allow said Francis Keefe to have access to and make examination of all the ballots, votes and check lists in your custody as Town. Clerk as a public record, being the same ballots, votes and check lists returned by the election officers of said Kittery to you, in your said capacity as Town Clerk of the town of Kittery, which were used and unused at said State election held in said Kittery on the 12th day of September, 1898, for the election of Representative from the classed towns of Kittery and Eliot to the 69th Legislature of Maine to be convened on the first Wednesday of January, 1899, or that you show us cause to the contrary thereof, that the same complaint may not, by your default, be repeated to us; and how you shall have executed this our writ, make known to us forthwith at this term of the Supreme Judicial Court now being held at Alfred, for our County of York on this fourth day of October, A. D. 1898, there returning to us this our said writ.

Witness Albert R. Savage, Esq. a Justice of our said Supreme Judicial Court, at Alfred, the fourth day of October, in the year of our Lord one thousand eight hundred and ninety eight.

James E. Hewey, Clerk.

The defendant took exceptions to the order of the court directing the writ to issue, and the case was certified to the Chief Justice under the provision of R. S., c. 102, § 16, as amended.

*Geo. M. Seiders and Frank D. Marshall*, for petitioner.

*Samuel W. Emery*, of the N. H. bar for respondent.

The ballots cast at the biennial election held in September, 1898, are not a "public record" in the fullest, or even in a general sense. They are a public record, not to be resorted to by all persons, as a record of chattel mortgages may be, but a public record for use on important public occasions, such as a recount or

contest when the election of a county officer is in question, (R. S., c. 4, § 53, amended,) or when a legislative committee on elections recounts the ballots in a contest pending in the legislature.

That this is so is apparent when we consider the nature of the ballots, the fact that the statute does not, as at § 9, with respect to nomination papers, require them to be open to general inspection, and the fact that it is only as sealed packages that they have the protection of the law after being once sealed.

If they are a public record in a general sense, every person has right to count and examine them, and in frequent handlings the pencil marks would be obliterated, and frequent opportunities for fraud offered. It is easy for an unscrupulous person to nullify a ballot by a surreptitious pencil mark, or to detach a "sticker." The exercise of a public right, which is destructive of the main object of the law,—to keep the ballots as evidence,—cannot be supposed to have been intended. These ballots, the best possible proof in many cases of contest, are the only evidence, and any mutilation or tampering with them is fatal to their credit. Also, frequent handling may destroy their credit by rubbing off marks, or detaching stickers. The seals, broken in the Supreme Judicial Court when the contest over a county office is in question, may have their sanctity restored by a resealing and superscription by the clerk of the court showing when and why the package was opened. And the same is true if broken by authority of the legislative committee on elections. But if they are a "public record" in a general sense, the package may be lawfully broken 5000 times and the ballots reduced to shreds by handling. To say that only the candidates may open the packages is to deny the words "public record," the meaning the petitioner claims for them. Our view is that they are a "public record," but usable as such only by tribunals which are called upon to decide right to office.

The petitioner does not stand in need of the remedy he asks, because he can have a recount by the legislative committee on elections. A writ of mandamus will not issue where there is another adequate remedy.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

EMERY, J.   By Act of 1891, c. 102, § 25, as amended by Act of 1893, c. 267, being "an Act to provide for the printing and distributing ballots at the public expense, and to regulate voting for state and city elections" it is provided that after the election is over "when the ballots have been sorted and counted and the result declared and recorded, all the ballots shall in open meeting be sealed in a package which said package, together with the check lists sealed in the same manner as the ballots, shall be forthwith delivered to the city, town or plantation clerk to be preserved by him as a public record for six months." The clerk and all other persons are forbidden to "abstract from or in any manner tamper with" said packages.

At the state election of 1898 the petitioner's name was on the official ballots in the town of Kittery as a candidate for representative to the legislature. According to "the result declared and recorded" he failed of an election, but he believes that if the ballots had been properly sorted and counted, he would appear to be elected. He desires to inspect the ballots used in that election and which were sealed in a package and returned to the town clerk of Kittery, and are now in his office still sealed up in that package, the six months not having expired. Has he any legal right to inspect them?

It is argued that he can only inspect the exterior of the package, that it is the package sealed and to be kept sealed, and not its contents, which is to be "preserved by the clerk as a public record." Such a construction would leave the statute without meaning or purpose. The only use suggested in the argument for packages which are to be kept sealed is that they can be taken into the courts or legislature and there unsealed and sealed again. There is, however, no suggestion in the Act that the packages are to be taken from the clerk's office, or that an inspection of their contents can be had only by the court or the legislature.

The contents of the packages, the ballots, are the concern of the

statute. Its language must be applied to them. They are to be preserved. They are to be "the public record," and their place is in the custody of the town clerk. A record, however, is not public, unless it can be inspected by any person interested in what it shows.

It is again urged that the clerk is forbidden to "in any manner tamper with" the package. Taken by itself this language might indicate that the clerk could not open the package, though the word "tamper" in a criminal statute at least, has the limited meaning of improper interference "as for the purpose of alteration; and to make objectionable or unauthorized changes." Cent. Dict. Taken in connection with the language of the statute declaring the packages (in their contents) to be public records, it is evident that the clerk is not forbidden to open the packages to enable interested persons to inspect the ballots.

We think the petitioner has a legal right to inspect the ballots, a right which the town clerk must accord to him, and that the mandamus must be made peremptory. It does not follow, however, that the petitioner or any one in his behalf can sort or count, or in anyway handle or even touch the ballots. He can inspect them and they must be exposed to his inspection, but they are all the while in the custody of the clerk and he is responsible for them. The inspection must be in his presence, and he can make and insist on such regulations or restrictions consistent with the right of inspection, as will secure every ballot like any other record from loss, impairment or change in any respect. The clerk can afterward re-seal the package for greater security until inspection is again required by some person interested.

*Exceptions overruled.*