**TOWN OF FREEPORT**

v.

**BRICKYARD COVE ASSOCIATES.**

Supreme Judicial Court of Maine.

Argued May 3, 1991.

Decided July 17, 1991.

---

ing a bench trial, the Superior Court (Cumberland County, *Brodrick, J.*) entered judgment for the Town. On Brickyard Cove's appeal, we affirm and award the Town its attorney fees.

Brickyard Cove owns real estate on both sides of Flying Point Road in Freeport, including a previously heavily wooded, 24–acre waterfront parcel in the zone designated as the Resource Protection District (RP–1) under the Town's zoning ordinance (the Ordinance). In July 1988 the managing partner decided to harvest timber on the Freeport properties to raise money. Working with a woodcutter, she selected areas to be cut and included in her plan the clearing of some areas to open a water view. Once the managing partner and the woodcutter had laid out the areas to be cut, they consulted the town planner at the Freeport town office. The planner advised them that timber harvesting was a permitted use in the RP–1 zone, so Brickyard Cove did not need a permit as long as its cutting conformed to the performance standards laid down in the Ordinance for timber harvesting.

Several days later the Town's shellfish warden, on a routine patrol of shore areas, noted cutting on Brickyard Cove's land, as well as erosion and silt in the stream and cove areas where trees and vegetation had been clear-cut. He notified the Town's code enforcement officer (C.E.O.), who inspected the site with the warden and the town manager; they noted clear-cut areas and the absence of erosion control measures except one small area of netting. The C.E.O. instructed Brickyard Cove to stop cutting and to implement erosion control measures, following the oral order with a written one on August 2, 1988. The Town hired a landscaping service that inventoried the clear-cut areas and suggested a reforestation and restoration plan. When Brickyard Cove refused to implement the proposed restoration plan, the Town sued to enforce its zoning ordinance pursuant to the Maine Shoreland Zoning Act, 38 M.R.S.A. § 444 (Supp.1990).

After hearing the court entered judgment for the Town, finding that Brickyard

E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for plaintiff.

Catherine O'Connor (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

The Town of Freeport brought this action against Brickyard Cove Associates (Brickyard Cove), a general partnership, seeking the assessment of civil penalties against it for violation of the Town's zoning ordinance and an order that Brickyard Cove restore damaged shoreland. Follow-

Cove's activity had constituted clear-cutting, not timber harvesting, that the managing partner had intentionally misrepresented the nature of the planned cutting to the town planner, and that the violation of the Ordinance had been willful. Based on those findings, the court imposed the maximum civil penalty of $2,500, *see* 30–A M.R.S.A. § 4452(3)(B) (Pamph.1990), awarded the Town attorney fees and costs, *see id.* § 4452(3)(D), and ordered Brickyard Cove to implement the Town's restoration plan. The court set the Town's attorney fees at $32,000.

## I.

### *Validity of the Zoning Ordinance*

■ Brickyard Cove's cutting on its waterfront property was subject to the constraints of those sections of the Freeport Zoning Ordinance that govern the RP–1 District. The Ordinance states the Town's objective to limit strictly the activities allowed in that Resource Protection District:

It is the intent of this District to protect the most fragile shoreline and natural areas, including flood plains, critical aquifer recharge areas and fresh and salt water wetlands, in which development would lower the water quality, significantly disturb essential natural plant and animal relationships, or general scenic and natural values, and to discourage devlelopment in unsafe or unhealthy areas.

Freeport, Me., Zoning Ordinance § 420(A) (May 1988). Timber harvesting is a permitted use within the RP–1 District as long as the harvesting complies with the performance standards set forth in section 507(B) of the Ordinance. The first of these performance standards requires that the harvesting leave behind a "well-distributed stand of trees." Freeport, Me., Zoning Ordinance § 507(B)(1)(a). Section 104 defines "timber harvesting" as "cutting of timber, consistent with sound forest management practices."

Brickyard Cove argues that the absence of a definition for the term "well-distributed stand of trees" leaves the Ordinance too vague to be enforceable because there was no way for Brickyard Cove to know that clear-cutting was not permissible as timber harvesting. *See McCallum v. City of Biddeford,* 551 A.2d 452, 453 (Me.1988) (ordinance must be sufficiently clear that a person of ordinary intelligence understands what it means). The absence of a definition of a term in an ordinance does not compel a finding of invalidity; it means only that the term will be given its common, everyday meaning unless the context dictates otherwise. *See Our Way Enterprises, Inc. v. Town of Wells,* 535 A.2d 442, 444 (Me.1988). Webster's defines a "stand" as a "growth of plants or trees." *Webster's New International Dictionary* 2455 (2d ed. 1961). Thus timber harvesting that left behind a well-distributed stand of trees would leave behind at least *some* trees. That definition of "stand" is consistent with the Ordinance definition of timber harvesting as cutting that comports with sound forestry management practices. It is also consistent with the commonsense meaning of "timber harvesting" as the cutting of timber trees of merchantable size, not clear-cutting. The Ordinance is sufficiently clear to give notice that the timber harvesting permitted in the RP–1 District does not extend to clear-cutting and Brickyard Cove's contention to the contrary is without substance.

## II.

### *Compliance with Performance Standards for Timber Harvesting*

■ Equally without merit is Brickyard Cove's contention that the court erred in finding that Brickyard Cove had failed to comply with the performance standards of the Ordinance. Section 507(B) lists the following performance standards for timber harvesting:

1. Harvesting Operations

   (a) Harvesting operations shall be conducted in such a manner that a well-distributed stand of trees is retained.

   (b) Harvesting activities shall not create single openings greater than seven-

ty-five hundred (7,500) square feet in the forest canopy.

(c) Harvesting operations shall be conducted in such a manner and at such a time that minimal soil disturbance results. Adequate provision shall be made to prevent soil erosion and sedimentation of surface waters.

Freeport, Me., Zoning Ordinance § 507(B)(1). Brickyard Cove failed to meet any of these standards. First, its clear-cutting did not leave behind the requisite well-distributed stand of trees. Second, the court received credible evidence that Brickyard Cove's cutting opened a hole in the forest canopy larger than 7,500 square feet when the spread of branches away from the tree trunks was taken into consideration. Brickyard Cove's contention that the allowance for openings in the canopy up to 7,500 square feet permits clear-cutting of that area is without merit. A "canopy" is "[a]ny overhanging shelter or shade," *see Webster's New International Dictionary* at 393, so a hole in the canopy results from the cutting of trees large enough to have overspreading branches, not the clearing of every shrub and sapling in the area. Finally, Brickyard Cove took almost no measures to prevent or minimize erosion, and it was erosion and silt in the mussel beds that alerted the Town officials to the cutting operation. We will set aside the court's factual findings only if clearly erroneous. *See Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981). Ample evidence in the record refutes any attack on the court's finding that Brickyard Cove failed to comply with the performance standards.

### III.

### *Order of Restoration*

■ In addition to assessing the maximum statutory penalty of $2,500, the court ordered Brickyard Cove to correct the damage caused by its willful violation by restoring the entire cut area.[1] The court did not, as Brickyard Cove contends, abuse its discretion by ordering it to restore the entire cut area rather than just the cut area in excess of 7,500 square feet. Since all of Brickyard Cove's cutting violated the Ordinance's performance standards, it was appropriate for the court to include the entire cut area in its order for restoration. Further, Brickyard Cove can in any event remedy only partially the damage it has done to any part of the area cut. It is impossible to put the trees back; the best Brickyard Cove can do is to plant trees that will over several decades become the equivalent of what was cut. The court's order that Brickyard Cove both restore the cut area and pay the maximum monetary penalty does not result in any injustice in light of Brickyard Cove's blatant disregard of the Ordinance.

### IV.

### *Estoppel*

■ Brickyard Cove contends that because it relied on the statement by the town planner that no permit was required for timber harvesting, the Town is estopped from bringing this action against Brickyard Cove to seek damages for the cutting that Brickyard Cove characterizes as harvesting. This argument is without merit. Brickyard Cove can assert an equitable estoppel against the Town only if it shows both that it was induced to act to its detriment by the declarations of a town official and that its reliance on those declarations was reasonable. *See Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 105–06 (Me.1984). Brickyard Cove could not reasonably rely on the answer it received from the planner for the simple reason that in asking about the need for a permit it misrepresented the nature

---

**1.** 30–A M.R.S.A. § 4452(3)(C) (Pamph.1990) provides in pertinent part:

When the court finds that the violation was willful, the violator shall be ordered to correct or abate the violation unless the abatement or correction results in:

(1) A threat or hazard to public health or safety;

(2) Substantial environmental damage; or

(3) A substantial injustice.

The corresponding provision in effect at the time of Brickyard Cove's violation, 30 M.R.S.A. § 4966(3)(C) (Pamph.1988), is the same except for minor language changes.

of the cutting it planned to undertake. Having not asked about the permissibility of the clear-cutting it in fact planned, Brickyard Cove cannot now raise an estoppel against the Town on the basis of its planner's correct answer to Brickyard Cove's question that concerned only timber harvesting. The record amply supports the court's finding that Brickyard Cove had no factual basis for its assertion of an estoppel against the Town's enforcement of its zoning ordinance.

## V.

### *Attorney Fees*

We review the trial court's award of attorney fees only for an abuse of discretion, *see Baker v. Town of Woolwich*, 517 A.2d 64, 70 (Me.1987), and we find none in the case at bar. There is no merit in any of Brickyard Cove's arguments for reducing the amount of the fees. The court was well justified in awarding the Town the full fees earned by its attorneys. First, Brickyard Cove's contention that it was misled by a Town official is little more than a variation of the estoppel argument, and, as explained, Brickyard Cove's own misrepresentation of its planned cutting meant that it had no basis on which to rely on the answer given by the Town official. Second, the fact that Brickyard Cove ceased its illegal cutting immediately upon being told to do so is no basis for the reduction of attorney fees. A party cannot protect itself from being penalized for a past willful violation of a zoning ordinance simply by refraining from any future violation.

Attorney fees for the defense of an appeal are appropriate in cases that are brought, as was this one, under the Zoning Enforcement Act. *See Town of Holden v. Pineau*, 573 A.2d 1310, 1316 (Me.1990). For all the reasons that the Superior Court awarded attorney fees at the trial level, attorney fees should also be awarded to the Town for the appeal. Those appellate fees should run from May 10, 1990, the latest date for which the trial court awarded fees.

Other issues raised by Brickyard Cove do not merit discussion.

The entry is:

Judgment affirmed; case remanded to the Superior Court for determination and award of attorney fees on appeal.

All concurring.