1998 ME 29

**STATE of Maine**

v.

**Donna M. SPAULDING.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 23, 1997.

Decided Feb. 11, 1998.

Andrew Ketterer, Attorney General, Mary M. Sauer, Asst. Atty. Gen., Augusta, for State.

Joseph R. Hunt, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1] Donna M. Spaulding appeals from the judgment entered in the Superior Court (Kennebec County, *Calkins, J.*) affirming her conviction in the District Court (Augusta, *Perry, J.*) for tampering with public records in violation of 17–A M.R.S.A. § 456(1)(A) (1983). Spaulding contends that her conduct, as a matter of law, was not a violation of 17–A M.R.S.A. § 456(1)(A). We agree and vacate the judgment.

[¶ 2] In order to be employed as a Certified Nursing Assistant (CNA) in Maine, an individual's name must be listed on the CNA Registry maintained by the Department of Human Resources. On her application for listing on the CNA Registry, Donna Spaulding placed a checkmark beside the word "no" in response to the question, "Have you ever been convicted of a crime?". At the time Spaulding completed her CNA Registry application she had two prior criminal convictions: a 1994 conviction for unemployment fraud, 26 M.R.S.A. § 1051(1) (1992); and a 1986 conviction for false representation to an overseer, 22 M.R.S.A. § 4491 (1992).

[¶ 3] Spaulding was charged with tampering with public records or information, 17–A M.R.S.A. § 456(1)(A), Class D. The District Court found Spaulding guilty and ordered Spaulding to pay a $400 fine. The Superior Court affirmed her conviction. This appeal followed.

[¶ 4] When the Superior Court acts as an intermediate appellate court, we review directly the decision of the District Court.

*Melanson v. Belyea,* 1997 ME 150, ¶ 4, 698 A.2d 492, 493. We review the trial court's interpretation of a statute for errors of law. *Id.*

[¶ 5] Section 456(1)(A) of Title 17–A, Chapter 19, provides:

1. A person is guilty of tampering with public records or information if he:

A. Knowingly makes a false entry in, or false alteration of any record, document or thing belonging to, or received or kept by the government, or required by law to be kept by others for the information of the government;....

Also within Maine's criminal code, Chapter 19 (Falsification in Official Matters) is section 453, "Unsworn falsification." Pursuant to this section, a person is guilty of unsworn falsification if:

A. He makes a written false statement which he does not believe to be true, on or pursuant to, a form conspicuously bearing notification authorized by statute or regulation to the effect that false statements made therein are punishable;

B. With the intent to deceive a public servant in the performance of his official duties, he

(1) makes any written false statement which he does not believe to be true, provided, however, that this subsection does not apply in the case of a written false statement made to a law enforcement officer by a person then in official custody and suspected of having committed a crime, except as provided in paragraph C; or

(2) knowingly creates, or attempts to create, a false impression in a written application for any pecuniary or other benefit by omitting information necessary to prevent statements therein from being misleading ...

17–A M.R.S.A. § 453 (1983).[1]

[¶ 6] The issue in this case is whether Spaulding's conduct—misreporting a material fact on a government form—constitutes tampering with a public record pursuant to section 456(1)(A). Spaulding argues that section 456 was not intended to criminalize the making of a false statement on a form then submitted to a public official. Spaulding contends that section 453 is the statutory provision intended by the legislature to address the making of false statements in forms submitted to public officials. Spaulding notes that section 453 criminalizes the falsification of forms then submitted to the government only when such falsification is intentional or when the form conspicuously bears on its face that false statements made therein are punishable. Criminalizing her conduct pursuant to section 456, argues Spaulding, unlawfully avoids the specific elements the legislature deemed necessary for criminal liability to attach for the same conduct pursuant to section 453. We agree.

[¶ 7] When interpreting a statute, we examine the plain meaning of the statutory language in order to give effect to the legislative intent, avoiding absurd, illogical, or inconsistent results. *See Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). The plain wording of section 456 supports Spaulding's argument that her conduct does not constitute "tampering with public records" pursuant to section 456. For Spaulding's conduct to be criminal pursuant to section 456, "Tampering with public records or information," the definition of "tamper" would have to diverge from its plain meaning.[2] The defining element of "tamper" is the alteration or change of an existing docu-

---

1. Sections 453 and 456 are Class D crimes.

2. In *Keefe v. Donnell,* 92 Me. 151, 42 A. 345 (1898), we considered the term "tamper" in the context of a charge of ballot tampering. We stated that:

the word "tamper" in a criminal statute at least, has the limited meaning of improper interference "as for the purpose of alteration; and to make objectionable or unauthorized changes."

*Id.* at 159, 42 A. 345 (citations omitted). The relevant definition of "tamper" in Webster's New International Dictionary reads, "[t]o meddle so as to alter a thing; esp., to make corrupting or perverted changes; as, to tamper with a document or a text; to interfere improperly." Webster's New International Dictionary 2575 (2d ed.1960); *see Town of Freeport v. Brickyard Cove Assocs.,* 594 A.2d 556, 558 (Me.1991) (use of dictionary definition to assist Court in statutory construction).

ment. Spaulding did not alter or change information on a document; she incorrectly represented that she had no prior criminal convictions on her CNA Registry application. The language of section 456 addresses documents "received or kept by the government," not those that *will be* received or kept by the government. If we accept the State's construction of section 456, then we would effectively be holding that, pursuant to section 456, one could tamper with a blank piece of paper by writing a falsehood upon it and sending it to the government. *See Finks v. Maine State Highway Comm'n,* 328 A.2d 791, 798 (Me.1974) ("Absent a legislative definition ... [a term] must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, *and the consequences of a particular interpretation.*") (emphasis added) (citations omitted).

[¶ 8] While the legislative history of section 456, as evidence of legislative intent, is not extensive, it does support our interpretation. The comment for section 456 states that the section "is taken from the Proposed Criminal Code of Massachusetts, chapter 268, section 7." 17–A M.R.S.A. § 456 comment (1975). The Massachusetts Revision Commission Note for section 7, tampering with public records or documents reads:

The *protection* given by § 7 to public records, documents and things kept by or for the information of the government is almost entirely absent under present statutes, unless there is a malicious injury to legal notices or other personal property ... The Commission believed *such protection was needed,* but each paragraph requires knowledge of falsity or of lack of authority, and paragraphs (b) and (c) require also intention to pass as genuine, or to destroy, the protected records, documents and things. Thus persons—often public servants—*who inadvertently misuse them* would not be liable. . . .

Proposed Criminal Code of Massachusetts, C. 268, § 7 note (1972) (emphasis added).

[¶ 9] This note illustrates the point that section 7 was drafted to afford "protection" to government records—documents that

have already been received by the government—and not to documents destined to be received by the government. This point is supported by the enunciated legislative intent of section 7 to avoid the imposition of liability upon public servants who might inadvertently mishandle public records, a legislative intent echoed ·in the comment to section 456 itself: "[i]t is drafted, however, so as not to include inadvertent mishandling of material." 17–A M.R.S.A. § 456 comment (1975). These legislative history excerpts support our holding that the term "public records" as contemplated by section 456 refers to documents already received by the government, not documents that will be received by the government.

[¶ 10] Our examination of the statutory scheme embodied in Chapter 19, Falsification in Official Matters, also confirms our reading of section 456. In interpreting section 456, we look to create a harmonious result between section 453 and section 456—presumably the intent of the legislature. *See Davis v. Scott Paper Co.,* 507 A.2d 581, 583 (Me. 1986); *Finks,* 328 A.2d at 795 ("Every statute must be construed in connection with the whole system of which it forms a part and all legislation on the same subject matter must be viewed in its overall entirety in order to reach a harmonious result which we presume the Legislature intended.") (citations omitted); *Friendship v. Bristol,* 132 Me. 285, 289, 170 A. 496 (Me.1934) (in order for Court to determine legislative intent concerning statute it must consider sections of same statutory chapter together—"the legislative intent is to be drawn from a consideration of the whole act, and effect must be given, if possible, to every part of it"). We acknowledge that the law "permits one matrix of facts to generate, in terms of its legal consequences, more than one criminal offense." *Fuller v. State,* 282 A.2d 848, 852 (Me.1971) (citing *State v. Farnham,* 119 Me. 541, 112 A. 258 (1921)). We consider section 453, however, not to assess an alternative criminal statute that Spaulding may have been prosecuted under, but rather to shed light on whether section 456 was intended by the legislature to address Spaulding's conduct at all.

[¶ 11] Spaulding knowingly submitted an application to the CNA Registry office that affirmatively omitted her prior criminal convictions. Pursuant to section 453, Spaulding would be criminally liable for this act if: (1) she made a written false statement she did not believe to be true on a form bearing notification authorized by statute or regulation to the effect that false statements made therein were punishable; or (2) the false statement was made with the intent to deceive a public servant in the performance of his official duties. 17–A M.R.S.A. § 453 (1983). The State contends that Spaulding may be prosecuted for the same act pursuant to section 456 although neither of the above-mentioned elements need to be proved.

[¶ 12] The 1975 Comment to section 453 states that "[t]he deception of a public servant is penalized here in narrow circumstances." 17–A M.R.S.A. § 453 comment (1975).[3] Allowing the State to prosecute Spaulding for her conduct, although the State did not have to demonstrate that Spaulding intended to deceive the State or that the form she filled out bore a notice that false statements made therein are punishable, considerably widens the circumstances under which one may be penalized for deceiving the government. Permitting the prosecution of Spaulding pursuant to section 456 circumvents the legislative intent behind section 453 and produces an inharmonious construction of Chapter 19. *See Guilford v. Monson*, 134 Me. 261, 185 A. 517 (1936) ("[A]ll the statutes on one subject are to be viewed as one. Such a construction must prevail as will form a consistent and harmonious whole, instead of an incongruous, arbitrary and exceptional conglomeration.") (quoting *Smith v. Chase*, 71 Me. 164 (1880)).

██ [¶ 13] Applicability of section 456 is logically limited to the alteration of an existing public record. Tampering pursuant to section 456 should not encompass the acts of unsworn falsification—that is the realm of section 453.

The entry is:

Judgment vacated. Remanded for the entry of a judgment of acquittal.

LIPEZ, Justice, with whom CLIFFORD, Justice, joins, dissenting.

[¶ 14] I must respectfully dissent. The Court imposes an unduly restrictive meaning on 17–A M.R.S.A. § 456(1)(A) because of its misreading of the words "received" and "tampering."

[¶ 15] The Court observes that section 456 addresses documents "received or kept by" the government, and construes these words to mean that Spaulding could only be charged with a violation of section 456 if the application she completed was already a public record in the possession of the government. By its terms, section 456 is not limited to tampering with "any record, document or thing" that is already a public record. The statute proscribes knowingly making "a false entry in, or false alteration of any record, document or thing belonging to, or received or kept by the government. . . ." The words "belonging to" and "kept" describe a "record, document or thing" that is already a public record in the possession of the government. If the word "received" also refers to such a "record, document or thing," it is redundant. No word in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible. *See Struck v. Hackett*, 668 A.2d 411, 417 (Me.1995). The word "received" only has independent meaning in a case such as this, where the false entry is made on an application for a government service, and the application with a false entry is then given to the government. Knowingly making the false entry is not a crime until the document is "received" by the government. The Court's redundant reading of the word "received" is contrary to a basic princi-

3. The 1975 Comment to section 453 states that:
   This section continues the pattern of the first two sections of this chapter by providing a lesser penalty for falsity that is neither sworn nor in any official proceeding. The deception of a public servant is penalized here in narrow

circumstances. There need not be any oath or affirmation when these circumstances occur. The provisions concerning available and unavailable defenses contained in the first two sections are continued here as well.
17–A M.R.S.A. § 453 comment (1975).

ple of statutory interpretation and finds no support in the plain language of the statute.

[¶ 16] In its discussion of the word "tampering" in section 456, the Court states that "the defining element of 'tamper' is the alteration or change of an existing document. Spaulding did not alter or change information on a document; she incorrectly represented that she had no prior criminal convictions on her CNA Registry application." In reaching this conclusion about the significance of the word "tampering," the Court relies on the 1898 case of *Keefe v. Donnell*, 92 Me. 151, 42 A. 345, and a dictionary definition. Those sources offer scant support for the Court's conclusion.

[¶ 17] In *Keefe v. Donnell*, the Court decided that a town clerk faced with a recount challenge could open a package of sealed ballots in his possession without offending an 1891 election statute that forbade a clerk and all other persons to "abstract from or in any manner tamper with" such packages. The Court's reference to the word "tampering" in a criminal statute was an aside to emphasize that the word "tamper" as used in the 1891 election statute deals with improper interference rather than the legitimate "tampering" requested of the clerk for the purpose of a ballot recount. The Court's point was a simple one. Tampering suggests wrongdoing. The Court's discussion of the word "tamper" as used in this 1891 election statute is irrelevant to the import of the word in a criminal code adopted in 1975.

[¶ 18] The dictionary definition cited by the Court is only one of many dictionary definitions of tamper. For example, the American Heritage Dictionary contains these definitions: "to interfere in a harmful manner ...; to meddle rashly or foolishly ...; to bring about an improper situation or condition by clandestine means...." *American Heritage Dictionary* 1241 (2d college ed. 1985). "To alter improperly," in the sense of the alteration of the information on a document or text, is only one of many meanings of the word tamper.

[¶ 19] Moreover, by asserting that the defining element of "tamper" is the alteration or change of an existing document, the Court ignores that portion of 17-A M.R.S.A. § 456(1)(A) which states that "a person is guilty of tampering with public records or information if he ... *knowingly makes a false entry in* ... any record, document or thing belonging to, or received or kept by the government,...." (emphasis added). That "false entry" language is the language relied upon by the State in its criminal complaint against Spaulding:

> On or about March 20, 1995, in the City of Augusta, County of Kennebec, State of Maine, DONNA M. SPAULDING, did knowingly make a false entry, specifically by placing a check mark beside the word "no" in response to the question "Have you ever been convicted of a crime?"

The complaint does not refer to the alternative "or false alteration" language of the statute. By knowingly making a false entry in the application that she submitted for placement on the Maine Registry of Certified Nursing Assistants, Spaulding violated the "false entry" prohibition of 17-A M.R.S.A. § 456(1)(A).

[¶ 20] In concluding that section 456 does not apply to the conduct of Spaulding, the Court also relies unduly on the provision of 17-A M.R.S.A. § 453(1)(A) that punishes for "unsworn falsification" an individual who makes a written false statement on "a form conspicuously bearing notification authorized by statute or regulation to the effect that false statements made therein are punishable." It is true that the application submitted by Spaulding did not contain such a notification. Therefore, she could not be prosecuted for a violation of section 453(1)(A).[4] By its terms (the requirement of

---

4. There is the suggestion in the Court's opinion that it is unfair to punish Spaulding criminally in the absence of a notification on the application that she could be prosecuted criminally for any false entry. Although it is true that the application filled out by Spaulding did not warn of possible criminal penalties, the document did advise her of the importance of honest answers:

> The Maine Registry of Certified Nursing Assistants shall deny any application for placement on the "Registry" that contains misrepresentation(s) or in any way attempts to obtain placement on the "Registry" by deceitful or fraudulent means. Any applicant who is found to have gained placement on the "Registry" based upon an application containing known

a form bearing a notification authorized by statute or regulation), the scope of section 453(1)(A) is much narrower than the scope of section 456(1)(A), which applies broadly to a person who "knowingly makes a false entry in ... *any record, document or thing....*" (emphasis added). There is no inharmonious or inconsistent result in the application of the broader statute to Spaulding's conduct, even though that conduct involved a government form which might have borne the notification required by section 453(1)(A). The Court essentially reads into the broad language of section 456(1)(A) a "government forms" exception on the basis of section 453(1)(A). There is no justification for that rewriting of the statute.

[¶ 21] Indeed, a further analysis of section 453(1)(B) emphasizes that an overlap between section 453 and section 456 is basic to the statutory scheme. Section 453(1)(B)(1) punishes the making of any written false statement with the intent to deceive a public servant in the performance of his official duties. Section 453(1)(B)(2) punishes anyone who, with the intent to deceive a public servant in the performance of his official duties, "knowingly creates, or attempts to create, a false impression in a written application for any pecuniary or other benefit by omitting information necessary to prevent statements therein from being misleading." Section 456(1)(A) requires a different culpable mental state by punishing a person who "knowingly" makes a false entry in any record, document or thing belonging to, or received or kept by the government. The State could have prosecuted Spaulding pursuant to section 453(1)(B)(1) or (1)(B)(2). The availability of these options did not preclude the State from proceeding pursuant to section 456(1)(A)

which, by its plain terms, also applies to the conduct of Spaulding.

[¶ 22] There is nothing unfair or illogical in the applicability of more than one criminal statute to the conduct of an individual. Where different proof is required for each offense, a single act may violate more than one criminal statute. *See Rosenberg v. United States,* 346 U.S. 273, 294, 73 S.Ct. 1152, 1163, 97 L.Ed. 1607(1953) (*Clark, J.,* concurring) ("Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to invoke either applicable law: 'At least where different proof is required of each offense, a single act or transaction may violate more than one criminal statute.'") (quoting *United States v. Beacon Brass Co.,* 344 U.S. 43, 45, 73 S.Ct. 77, 78–79, 97 L.Ed. 61 (1952)); *accord Kindred v. State,* 254 Ind. 127, 258 N.E.2d 411, 412–13 (1970) (citing *Von Hauger v. State,* 252 Ind. 619, 251 N.E.2d 116, 118 (1969)); *State v. Evans,* 153 Mont. 303, 456 P.2d 842, 843 (1969) (citing *State v. Lagerquist,* 152 Mont. 21, 445 P.2d 910, 915 (1968)). In this case, the same conduct may violate both section 453 and section 456, and the State is entitled to prosecute under either statute at its discretion in the absence of a clear and manifest legislative intent to the contrary. *See State v. Booke,* 178 Mont. 225, 583 P.2d 405, 408 (1978); *State v. Moore,* 174 Mont. 292, 570 P.2d 580, 584 (1977). There is no such clear and manifest contrary intent.[5] I would affirm the judgment of the court.

---

misrepresentation(s) or fraudulent or deceitful means shall be removed from the "Registry." After this warning, the following language appears above the signature line on the application: "I understand the above paragraph and state the information provided is accurate to the best of my knowledge." The application unmistakably advised Spaulding of her obligation to provide accurate information, and of the State's reliance on that accuracy.

**5.** The Court finds such an intent in a 1972 note of the Massachusetts Revision Commission

which proposed a section of the Massachusetts Criminal Code which became the model for section 456. That note reflects a concern for the protection of public records already apparent in the plain language of section 456. That note does not limit the applicability of section 456 to false entries in documents that are already public records, and the note cannot preclude the applicability of a statute whose plain language proscribes knowingly making a false entry in a document received by the government. The Court's analysis continues to reflect the faulty premise that there is a lack of harmony in a legislative

---

scheme if two criminal statutes involving different elements are applicable to a set of facts. There is no such lack of harmony. The Court uses scanty legislative history to resolve a nonexistent problem.