MAINE SUPREME JUDICIAL COURT                                 Reporter of Decisions
Decision:      2015 ME 72
Docket:        Pen-14-338
Argued:        April 8, 2015
Decided:       June 9, 2015

Panel:         ALEXANDER, GORMAN, JABAR, HJELM, and CLIFFORD, JJ.

STATE OF MAINE

v.

DANIELLE A. BECKWITH

HJELM, J.

[¶1]    Danielle Beckwith appeals from a judgment of conviction for attempted theft by deception (Class D), 17-A M.R.S. §§ 152(1)(D), 354(1)(B)(4) (2014) and two counts of tampering with public records or information (Class D), 17-A M.R.S. § 456(1)(A) (2014), entered in the trial court (*Romei, J.*) after a bench trial.    Beckwith argues that her conduct did not constitute a violation of 17-A M.R.S. § 456(1)(A) as interpreted in *State v. Spaulding*, 1998 ME 29, 707 A.2d 378, and that the evidence was insufficient to convict her of any of the charges.    For the reasons stated below, we overrule *Spaulding* in part and affirm the judgment.

I.  BACKGROUND

[¶2]   "Viewing the evidence admitted at trial in the light most favorable to the State, the [fact-finder] could rationally have found the following facts beyond a

2

reasonable doubt." *State v. Troy*, 2014 ME 9, ¶ 3, 86 A.3d 591 (quotation marks omitted).

[¶3] From 1990 to 1995 and again from 2005 until her termination in 2012, Beckwith worked for the Maine Judicial Branch Office of Transcript Production (Office), which coordinates the production of transcripts of court proceedings.[1] In 2007, Beckwith became the Office's supervisor, which, among other things, made her responsible for approving refunds for overpayment for transcripts. She held that position at the time of the incident giving rise to this case.

[¶4] When the Office receives a transcript order, a staff member estimates the cost of the transcript, which must be paid in full before the work begins. This information is entered in a database, an index, and a logbook. The estimated cost for the transcript is rounded up so that the deposit usually exceeds the actual cost. As a result of this practice, the requesting party is typically entitled to a refund after the transcript is completed. When the transcript has been produced and the actual cost has been determined, the Office's supervisor completes and signs a form authorizing the refund and submits it to the Judicial Department's Revenue Manager for approval. As long as the form is signed by a supervisor, the Revenue Manager approves the refund. The Office of the State Controller issues the refund

---

[1] The Office had different names at different times during Beckwith's employment and is now called "The Office of Transcript Operations and Projects."

check and mails it to the Office of Transcript Production, which then mails it to the party who is due the refund. The information documenting the order, including the case name, the docket number, the case type, the reason for the order, the contact information for the ordering party, as well as the payment and refund information, is entered in the database form.

[¶5] On October 17, 2012, a Production Associate in the Office opened the daily mail and found a transcript refund check for $2,750, payable to Alex Winchester, which is the name of Beckwith's daughter,[2] who was then seventeen years old and with whom Beckwith held a joint checking account. Beckwith had prepared and submitted the refund request to the Revenue Manager, who approved it on October 12, resulting in the issuance of the refund check. When the Production Associate came across the refund check in the mail, Beckwith was out of the office, and the Production Associate placed the check on Beckwith's desk.

[¶6] Later that day, the Production Associate searched the Office's database and did not find a transcript order from anyone named Winchester. The next day, October 18, 2012, however, the Production Associate searched the database again and found an entry for an order placed by an "Alec Winchester" for an original transcript in the case of *Laux v. Harrington*. Although the order form in the

---

[2] Beckwith's daughter's name is Alexandria Winchester, but she is often called "Alex."

4

database indicated that Winchester was notified of the deposit amount on September 23, 2012, the form itself was not created until October 17, 2012. Further, the records that the Production Associate saw on October 18 showed that the order was cancelled on the same day the deposit was paid, which was a highly unusual circumstance. That day, the Production Associate also noticed that Beckwith's computer monitor displayed one window containing the Winchester database entry and another window containing Google search results for "Alec Winchester."

[¶7] The Production Associate then conducted a search of the *Laux v. Harrington* case and found that in 2011, an original transcript had been ordered; a deposit of $3,900 had been paid; the original transcript had been prepared at a cost of $3,279; a refund of $621 had been issued; and a copy of the transcript had been requested and provided at a cost of $546.50.[3] Because the *Laux* transcript had been produced in 2011 and the length and cost of the transcript were known, someone ordering a copy of the transcript in 2012 would be billed the exact cost of the copy rather than an estimated amount, eliminating the prospect of a refund. Also, the form used when a copy of a transcript is ordered is different from the form used when an original transcript is ordered. The Winchester order was documented on a form used for original orders rather than duplicate orders.

---

[3] Because of different billing rates, a copy of a transcript costs less than the original.

[¶8]  The Revenue Manager and the Production Associate were unable to locate a record of a deposit by a "Winchester" or a deposit in the amount of $2,750, and neither could find any other documentation or records to support the refund request.  After this information was provided to Judicial Department supervisors, Beckwith was promptly terminated from employment.

[¶9]  Beckwith was charged with attempted theft by deception (Class D), 17-A M.R.S. §§ 152(1)(D), 354(1)(B)(4), and two counts of tampering with public records or information (Class D), 17-A M.R.S. § 456(1)(A).  The records underlying the two record tampering charges consist of the form on the electronic database in which Beckwith entered false information documenting the purported Winchester order and the refund request form Beckwith submitted to the Revenue Manager.  The case proceeded to a bench trial in June 2014.  At the close of the State's evidence and again at the close of all evidence, Beckwith unsuccessfully moved for judgment of acquittal.  The court found Beckwith guilty of all counts and, following a sentencing hearing in July 2014, imposed concurrent sixty-day jail sentences.  Beckwith appeals.

## II.  DISCUSSION

[¶10]  Beckwith argues that the evidence was insufficient to support the convictions.  "When a defendant in a criminal case challenges the sufficiency of the evidence to support the finding of guilt, we view the evidence in the light most

6

favorable to the State to determine whether the fact-finder could rationally find every element of the offense beyond a reasonable doubt." *State v. Woodard*, 2013 ME 36, ¶ 19, 68 A.3d 1250 (quotation marks omitted).

[¶11] We consider the two types of charges separately.

A.    Attempted Theft by Deception

[¶12] Beckwith was charged with the Class D offense of attempted theft by deception. A person commits the crime of theft by deception when she "obtains or exercises control over property of another as a result of deception . . . with [the] intent to deprive the other person of the property." 17-A M.R.S. § 354(1)(A), (B)(4) (2014). A person is guilty of criminal attempt if,

> acting with the kind of culpability required for the commission of the crime, and with the intent to complete the commission of the crime, the person engages in conduct that in fact constitutes a substantial step toward its commission . . . . A substantial step is any conduct that goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

17-A M.R.S. § 152(1) (2014).[4]

[¶13] The evidence supported the court's finding that Beckwith was guilty of attempted theft by deception. The record demonstrated that Beckwith requested a transcript refund check for $2,750 made out to her daughter even though the Office did not owe Beckwith's daughter any money, no one in that time frame had

---

[4] Theft of property exceeding $1,000 in value is a Class C crime. 17-A M.R.S. § 354(1)(B)(4) (2014). Criminal attempt of a Class C crime is a Class D crime. 17-A M.R.S. § 152(1)(D) (2014). Therefore, Beckwith's attempt to steal over $1,000 is a Class D crime.

paid a $2,750 deposit for a transcript, and no one with the daughter's name had ordered a transcript. Further, because the transcript at issue had already been produced several years earlier, the cost of a copy would have been $546.50, and a party requesting a copy would have been required to pay that fixed amount. On the day the refund check arrived at the Office, the database records did not include an entry for the transcript order. However, the following day—the same day that the Production Associate saw that Beckwith had conducted a Google search for "Alec Winchester"—the database records included an entry, which the court could have found to be backdated, for a transcript ordered by a person with that name and then cancelled on the same day the deposit was purportedly received. The court was therefore entitled to find that Beckwith created a fictitious transaction in order to steal money. The court was also entitled to conclude that Beckwith was guilty of criminal attempt under section 152(1)(D), because although she received the check, the information provided by the Production Associate to others within the Judicial Department triggered an investigation that led to Beckwith's termination from employment before she negotiated the check.

B.    Tampering with Public Records

[¶14]  Beckwith was also charged with two counts of tampering with public records. A person commits this crime when she "[k]nowingly makes a false entry in, or false alteration of any record, document or thing belonging to, or received or

8

kept by the government." 17-A M.R.S. § 456(1)(A). The evidence was sufficient to prove that Beckwith made entries in two governmental records or documents, namely, the database entries indicating the transcript order and the refund request, knowing that the entries were false, in an effort to obtain $2,750 from the State in the guise of a refund. Beckwith's conduct falls within the plain language of section 456(1)(A).

[¶15]  This conclusion calls for us to reconsider a portion of our holding in *State v. Spaulding*, 1998 ME 29, 707 A.2d 378. There, Spaulding submitted an application with the Maine Department of Human Resources to be listed as a Certified Nursing Assistant. *Id*. ¶ 2. On the application, she falsely represented that she had never been convicted of a crime. *Id*. As a result, Spaulding was charged with and convicted of tampering with public records pursuant to 17-A M.R.S. § 456(1)(A) (1983).[5] *Spaulding*, 1998 ME 29, ¶ 3, 707 A.2d 378. We reversed, holding in part that because the crime is labeled "tampering," it applies only to "the alteration or change of an existing document." *Id*. ¶ 7. Because Spaulding made a false entry when she created the document and "did not

---

[5]  The tampering with public records or information statute has not changed since that time. *See* 17-A M.R.S. § 456 (2014).

alter or change information on a document," *id.*, we held that she could not be found guilty of tampering with public records.[6] *Id.* ¶ 13.

[¶16]   As the dissent in *Spaulding* pointed out, this holding did not fully recognize the plain and unambiguous language in section 456(1)(A) that criminalizes making "a false entry" in a governmental record or document, as well as falsely altering those materials. *Id.* ¶¶ 15, 19 (Lipez, J., dissenting).   Here, the evidence demonstrated that Beckwith knowingly made false entries in State transcript records even though she did not alter or change the contents of existing records.   Despite our holding in *Spaulding*, Beckwith's proven conduct falls squarely within the definition of the crime of tampering with public records as established by the Legislature, and the court was entitled to find her guilty of both counts of that crime.   Consistent with the plain language of section 456(1)(A), *see State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125, we therefore overrule that aspect of the holding in *Spaulding* and now hold that section 456(1)(A) reaches the knowing entry of false information in a governmental record or document.[7]

---

[6]   We noted that Spaulding's conduct may have constituted the separate crime of unsworn falsification. *See* 17-A M.R.S. § 453 (1983). *State v. Spaulding*, 1998 ME 29, ¶ 13, 707 A.2d 378.

[7]   Another aspect of the holding in *Spaulding* is that section 456 applies only "to documents already received by the government, not documents that will be received by the government." *Id.* ¶ 9.  Because Beckwith made false entries in documents that were already in the State's possession, this case does not give us occasion to examine that part of the *Spaulding* analysis.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Marvin H. Glazier, Esq., Vafiades, Brountas & Kominsky, LLP, Bangor, for appellant Danielle A. Beckwith

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Kaylee J. Folster, Esq., Vafiades, Brountas & Kominsky, LLP, Bangor, for appellant Danielle A. Beckwith

Leanne Robbin, Asst. Atty. Gen., for appellee State of Maine