1999 ME 64

### In re MARCIAL O.

Supreme Judicial Court of Maine.

Argued April 5, 1999.
Decided April 26, 1999.

Mary K. Gonya Brennan, (orally), Orono, for appellant.

Andrew Ketterer, Attorney General, Christopher Leighton, Asst. Atty. Gen., Marina E. Thibeau, Asst. Atty. Gen., Katherine Greason, Asst. Atty. Gen., (orally), Geoffrey Goodwin, Asst. Atty. Gen., Augusta, for appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Marcial O. appeals from the judgment entered by the Superior Court (Penobscot County, *MacInnes, A.R.J.*) affirming the involuntary commitment order entered by the District Court (Bangor, *Hjelm, J.*) on February 3, 1998.

[¶ 2] On appeal, appellant contends that the District Court (1) should not have considered certain evidence in determining that Marcial O.'s "recent actions and behavior"

demonstrated a "likelihood of serious harm" pursuant to 34–B M.R.S.A. § 3801(4)(C) (1988),[1] because he is the ward of a public guardian, (2) lacked sufficient evidence to involuntarily commit Marcial O. pursuant to 34–B M.R.S.A. § 3864(6)(A) (Supp.1998),[2] (3) erred in allowing the testimony of a third examiner, and (4) erred in not allowing certain rebuttal testimony. The State argues that the case is moot because it released appellant to a convalescent home in April of 1998. Finding no error in the order entered by the District Court, we affirm.

## Background

[¶ 3] Prior to his release to a convalescent home in April of 1998, Marcial O. had been involuntarily committed at Bangor Mental Health Institute (BMHI) or incarcerated since 1992. He is also a ward of the Department of Human Services pursuant to 18–A M.R.S.A. § 5–601 (1998) and has an appointed guardian representative.

[¶ 4] On February 3, 1998, the District Court (Bangor, *Hjelm, J.*) entered an order involuntarily committing Marcial O. pursuant to 34–B M.R.S.A. § 3864 (1988 & Supp.1998). The court found a "likelihood of serious harm" based on the testimony that he still suffered from auditory hallucinations, en-gaged in mild to moderate disorganized thought processes, did not want to cooperate with community service providers and had stated repeatedly that he did not intend to continue to take his medication if released. The court also relied on unanimous expert opinions that although Marcial O. had made progress he could not live safely independently. *See* 34–B M.R.S.A. § 3864(6)(A)(1).

[¶ 5] The court determined that inpatient hospitalization was the "best available means of treatment" based on statements made by Marcial O. and the testimony of BMHI staff members and doctors that Marcial O. had not committed himself to supervised living and needed to live in a supervised setting. *See* 34–B M.R.S.A. § 3864(6)(A)(2). Finally, the court approved Marcial O.'s treatment plan which proposed treating his mental illness with medications, participation in hospital programs, psychotherapy, and regular evaluations. BMHI also had amended the plan to include participation by a community health provider. *See* 34–B M.R.S.A. § 3864(6)(A)(3).

[¶ 6] Marcial O. appealed the involuntary commitment order to the Superior Court.[3] On April 1, 1998, BMHI released Marcial O. into convalescent status in the custody of a

---

1. Section 3801(4)(C) defines "likelihood of serious harm" as:

   A reasonable certainty that severe physical or mental impairment or injury will result to the person alleged to be mentally ill as manifested by recent evidence of his actions or behavior which demonstrate his inability to avoid or protect himself from such impairment or injury, and, after consideration of less restrictive treatment settings and modalities, a determination that suitable community resources for his care are unavailable.

   34–B M.R.S.A. § 3801(4)(C) (1988).

2. Section 3864(6)(A) requires that:

   The District Court shall so state in the record, if it finds upon completion of the hearing and consideration of the record:

   (1) Clear and convincing evidence that the person is mentally ill and that the person's recent action and behavior demonstrate that the person's illness poses a likelihood of serious harm;

   (2) That *inpatient* hospitalization is the best available means for treatment of the patient; and

   (3) That it is satisfied with the individual treatment plan offered by the hospital to which the applicant seeks the patient's involuntary commitment.

   34–B M.R.S.A. § 3864(6)(A) (Supp.1998).

3. On January 6, 1998, the District Court dismissed without prejudice another commitment order filed in December of 1997, because BMHI had not complied with new statutory requirements.

   When the District Court (Bangor, *Hjelm, J.*) granted the order recommitting Marcial O. on February 3, 1998, Marcial O.'s appeal of an earlier commitment order entered by the District Court (Bangor, *Russell, J.*) on September 9, 1997, was still pending.

   On March 16, 1998, the Superior Court (Penobscot County, *Mead, J.*) vacated the commitment order of September 9, 1997. On March 30, 1998, the Superior Court (Penobscot County, *Kravchuk, C.J.*) denied Marcial O.'s petition for habeas corpus relief on the basis that the District Court had relied on 34–B M.R.S.A. § 3801(4)(B) (1988) in granting the commitment order of September 9, 1997, whereas it had relied on 34–B M.R.S.A. § 3801(4)(C) (1988) in granting the commitment order of February 3, 1998. Marcial O. did not appeal this decision.

public guardian.[4] On September 18, 1998, the Superior Court (Penobscot County, MacInnes, A.R.J.) determined that the case qualified as an exception to the mootness doctrine and affirmed the commitment order of February 3, 1998.

[¶ 7] Marcial O. filed a timely appeal to this Court.

## Mootness

[¶ 8] BMHI has released Marcial O. into convalescent status and his commitment order has expired. Thus, he is not under the restraint that has been the subject of this appeal.

[¶ 9] We only review cases that present a justiciable controversy. *See Sordyl v. Sordyl*, 1997 ME 87, ¶ 4, 692 A.2d 1386, 1387. "The test for mootness is whether 'sufficient practical effects [flow] from the resolution of [the] litigation to justify the application of limited judicial resources.'" *Campaign for Sensible Transp. v. Maine Turnpike Auth.*, 658 A.2d 213, 215 (Me.1995) (quoting *State v. Gleason*, 404 A.2d 573, 578 (Me.1979)).

[¶ 10] In certain circumstances, we will consider an appeal even if our decision will not provide an appellant any real or effective relief. An appeal qualifies as an exception to the mootness doctrine when:

> (1) sufficient collateral consequences will flow from a determination of the questions presented, (2) the question, although moot in the immediate context, is of great public interest and should be addressed for future guidance of the bar and public, and (3) the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting or determinate nature.

*Sordyl*, 1997 ME 87, ¶ 5, 692 A.2d at 1387 (citation omitted); *see also Campaign for Sensible Transp.*, 658 A.2d at 215; *Gleason*, 404 A.2d at 578.

[¶ 11] This case differs from *In re Faucher*, 558 A.2d 705 (1989), in which the Augusta Mental Health Institute discharged the appellant before the appeal was heard. There, the appellant challenged the sufficiency of the examination conducted by one of the clinical psychologists and the testimony of the other clinical psychologist. *Id.* at 705–706. We held that "[i]t is entirely possible that error in a commitment proceeding could escape review because of the brief length of the commitment. It is most unlikely, however, that the specific issue in the present case will be repeatedly presented." *Id.* at 706.

[¶ 12] Unlike *Faucher*, this case raises more than evidentiary issues particular to it. It also raises the issues of the extent of a guardian's responsibilities to a mentally ill ward and the proper application of the least restrictive treatment rule in light of those responsibilities. It is likely that these specific issues will be repeatedly presented, but may escape appellate review. *See Sordyl*, 1997 ME 87, ¶ 7, 692 A.2d at 1388 ("In order to qualify, the activity ... by its very nature, must be so short in duration that the issue will never be fully litigated prior to the cessation or expiration of the action.") (citing *National Council on Compensation Ins. v. Superintendent of Ins.*, 538 A.2d 759, 764 (Me.1988)).

[¶ 13] Application of the mootness doctrine in this case would create a class of cases insulated from appellate scrutiny. Accordingly, we decline to dismiss this appeal as moot and proceed to the merits of the issues raised by the appeal.

## Guardian

[¶ 14] When the Superior Court acts as an intermediate appellate court, this Court reviews the decision of the trial court directly. *See State v. Curtis*, 1998 ME 254, ¶ 2, 721 A.2d 175, 176; *State v. Spaulding*, 1998 ME 29, ¶ 4, 707 A.2d 378, 378. A commitment order is reviewed on questions of law, and the District Court's findings of fact are not set aside unless they are clearly erroneous. *See* 34–B M.R.S.A. § 3864(11)(A)–(B) (1988).

[¶ 15] The Appellant argues that since he is a ward of a public guardian, the District Court should not have considered his statements that he would not remain medication

---

4. Otherwise, the commitment order would have expired on June 3, 1998.

compliant and his lack of commitment to supervised living as "recent actions and behavior" which demonstrate a "likelihood of serious harm" as defined by 34–B M.R.S.A. § 3801(4)(C) (1988). According to appellant, the guardian has an affirmative duty to consent to community services on Marcial O.'s behalf, to ensure that he actively cooperates with community service providers and to ensure that he remains medication compliant, even if that requires bringing him to a hospital to have medications administered by injection. We disagree.

[¶ 16] The court appoints public guardians for "incapacitated persons ... in need of protective services." 18–A M.R.S.A. § 5–601 (1998). An incapacitated person is one:

> who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause except minority to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person;

18–A M.R.S.A. § 5–101 (1998). A guardian "shall make provision for the care, comfort and maintenance of his ward." 18–A M.R.S.A. § 5–312(a)(2) (1998). A guardian "may establish the ward's place of abode" and "may place the ward in any hospital or other institution for care in the same manner as otherwise provided for by law." 18–A M.R.S.A. § 5–312(a)(1). A guardian also "may give or withhold consents or approvals related to medical or other professional care, counsel, treatment or service for the ward." 18–A M.R.S.A. § 5–312(a)(3).

■ [¶ 17] The trial court did not err in using the evidence that the appellant challenges, even though he has a guardian. Marcial O.'s guardian testified that Marcial O. repeatedly refused community services, even though she discussed with him on multiple occasions the benefits that the services could provide him. She also testified that she could not force him to accept these benefits since he had the right to refuse them. Dr. Tingley and Dr. Wilson testified that a treatment plan will not be successful unless the patient participates in its development and cooperates with its implementation.

[¶ 18] Further, the guardian's duty to secure housing for Marcial O. if he were released into her custody is not a guarantee that he would accept it. *See Guardianship of Hughes,* 1998 ME 186, ¶ 11, 715 A.2d 919, 922 ("Although a guardian is entitled to establish the ward's place of abode, nothing prevents the ward from simply walking away from the chosen residence.") (citation omitted). Marcial O.'s lack of commitment to the idea of supervised living and the testimony of Dr. Tingley and Dr. Roberts that at various points Marcial O. discussed wanting to leave the state, indicate that even if he had been placed in supervising living, he would not have accepted it at that time.

[¶ 19] Similarly, the guardian's authority to consent to medications for Marcial O. is not an assurance that he will remain medication compliant. Nothing in the statute imposes an affirmative duty on the guardian to force medications on a ward or to bring the ward to a hospital to have medications administered by injection, if a ward decides to stop following a medication regimen. Marcial O.'s guardian, Dr. Roberts and Dr. Wilson testified that although a guardian technically may consent to medication for a ward, as a practical matter, the guardian will not force medications upon a ward even if needed. Moreover, a guardian may not possess sufficient medical knowledge to determine immediately that the ward has stopped taking prescribed medications before the ward's condition has deteriorated significantly.

[¶ 20] The fact that Marcial O. has a public guardian does not negate the relevance of his refusal to cooperate with community service providers and his statements that he would stop taking his medications. Thus, the trial court did not err by using this evidence in deciding to grant the involuntary commitment order.

### Sufficiency of the Evidence

[¶ 21] We also reject Marcial O.'s challenge to the trial court's findings pursuant to 34–B M.R.S.A. § 3864(6)(A) (Supp.1998) that (1) his "recent actions and behavior" demonstrated a "likelihood of serious harm," and (2) involuntary inpatient commitment was the least restrictive alternative for treatment. A

commitment order is reviewed on questions of law, and the District Court's findings of fact are not set aside unless they are clearly erroneous. *See* 34–B M.R.S.A. § 3864(11)(A)–(B) (1988).

[¶ 22] Clear and convincing evidence in the record supports the court's findings. The court's determination that the hospital established the "likelihood of serious harm" is supported by unanimous expert opinions that Marcial O. could not live safely independently and needed supervised placement and testimony that he experienced auditory hallucinations to which he responded despite five years of inpatient hospitalization. The decision is also supported by statements that he did not intend to continue to take his medications if released, testimony that failure to take his medications would cause his mental condition to deteriorate, and statements that he did not believe that he needed to cooperate with a community service provider.

[¶ 23] The evidence also supports the court's conclusion that inpatient treatment was the least restrictive means of treatment available. The testimony of the BMHI doctors and staff established that Marcial O. was not committed to the idea of supervised living and had rejected an earlier proposed placement. Even the doctor he selected testified that his expressions on the subject of supervised living during his examination were equivocal, ranging from firm opposition to gradual acceptance.

### Testimony of Third Examiner

[¶ 24] The Appellant also contends that the District Court exceeded its authority under 34–B M.R.S.A. § 3864(4)(A) (Supp.1998)[5] in allowing the testimony of a third examiner at the hearing. The court explained that it admitted the testimony of the third examiner because it found nothing in section 3864(4)(A) that limits the number of examiners to two.

[¶ 25] We review a trial court's interpretation of a statute for errors of law. *See Koch Refining Co. v. State Tax Assessor,* 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252; *Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d 523, 524. We first examine the plain meaning of the statute to give effect to the legislative intent. *See Koch Refining Co.,* 1999 ME 35, ¶ 4, 724 A.2d at 1252; *Estate of Whittier,* 681 A.2d 1, 2 (Me.1996). "We 'consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result presumably the intent of the Legislature, may be achieved.'" *Estate of Jacobs,* 1998 ME 233, ¶ 4, 719 A.2d at 524 (quoting *Davis v. Scott Paper Co.,* 507 A.2d 581, 583 (Me.1986)).

[¶ 26] The Legislature could have used the word "only," if it had intended to limit the number of examiners to two. Section 3864(4)(A), however, merely directs that the court "cause the person to be examined by 2 examiners." 34–B M.R.S.A. § 3864(4)(A). The authority given to the court in section 3864(5)(C)(2)[6] to admit any testimony as long as it is relevant further supports interpreting section 3864(4)(A) to permit admitting the testimony of a third examiner. 34–B M.R.S.A. § 3864(5)(C)(2) (1988).

[¶ 27] Thus, it was not error for the court to admit the testimony of the third examiner. We do not need to address the other evidentiary issues in the present context of this case.

The entry is:

Judgment affirmed.

---

5. Section 3864(4)(A) states as follows:
   Upon receipt by the District Court of the application and the accompanying documents specified in subsection 1 and at least 3 days after the person who is the subject of the examination was notified by the hospital of the proceedings and of that person's right to retain counsel or to select an examiner, the court shall cause the person to be examined by 2 examiners.
   34–B M.R.S.A. § 3864(4)(A) (Supp.1998).

6. Section 3864(5)(C)(2) provides as follows:
   The court shall receive all relevant and material evidence which may be offered in accordance with accepted rules of evidence and accepted judicial dispositions.... The court may, in its discretion, receive the testimony of any other person and may subpoena any witness.
   34–B M.R.S.A. § 3864(5)(C)(2) (1988).