2004 ME 76

**In re KEVIN C.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 27, 2004.
Decided: June 11, 2004.

Rubin G. Segal, Esq., Portland, for appellant.

Beth Dobson, Esq., Valerie A. Wright, Esq., Verrill & Dana, LLP, Portland, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Kevin C. appeals from a judgment entered in the District Court (Cumberland, *Beaudoin, J.*) ordering his involuntary commitment to Spring Harbor Hospital. Kevin contends that: (1) the court violated the involuntary commitment statute, 34–B M.R.S.A. § 3864(5)(C)(1) (1988), and his due process rights by holding a hearing where only one of two court-appointed examiners was present to testify; and (2) Spring Harbor failed to meet its burden of proof by clear and convincing evidence. Spring Harbor filed a motion to dismiss the appeal for mootness due to the fact that Kevin was discharged from Spring Harbor during the pendency of this appeal. We conclude that the appeal is not moot and affirm the judgment of the District Court.

## I. BACKGROUND

[¶ 2] Kevin C. suffers from schizoaffective disorder. He has resided at the Shalom House for seven years, a home that provides mental health services for adults with serious mental illness. Shalom House staff brought Kevin to Maine Medical Center in October 2003 because he had stopped taking his medication and had be-

come increasingly psychotic, paranoid, and disorganized in his thought process. Kevin was then transported to Spring Harbor Hospital,[1] and the hospital filed an application for Kevin's involuntary commitment.

[¶ 3] The District Court appointed two examiners to determine whether Kevin was mentally ill or posed a likelihood of serious harm, as required by the involuntary commitment statute, 34–B M.R.S.A. § 3864(4)(A) (Pamph.2003).[2] Kevin was thereafter examined by Dr. Judson Smith (who was chosen by Kevin) and Dr. Pamela Leone, both of whom are licensed clinical psychologists. Both examiners concluded that Kevin was mentally ill and posed a threat of harm to himself; consequently, the court scheduled a hearing on the hospital's petition. *See* 34–B M.R.S.A. § 3864(4)(D) (1988).

[¶ 4] At the hearing, Dr. Leone testified and the court admitted her report in evidence. Dr. Smith was not present at the hearing, but the hospital offered his report in evidence. Kevin objected to the admission of the report, and the court sustained the objection. Dr. James Ray, the doctor at the hospital who oversaw Kevin's care, also testified at the hearing, as did Kevin. After hearing the evidence, the court ordered that Kevin be hospitalized for a period not to exceed forty-five days. The court subsequently issued findings of fact and conclusions of law in response to Kevin's motion. Kevin was committed on October 30 and discharged on November 12, 2003.

## II. DISCUSSION

### A. Mootness

[¶ 5] Spring Harbor filed a motion to dismiss Kevin's appeal as moot. Kevin was discharged from Spring Harbor on the same day that he filed his notice of appeal. Spring Harbor contends that because Kevin is no longer in the care of Spring Harbor, there is currently no justiciable controversy and a decision on the merits is not warranted. For the reasons articulated today in *In re Walter R.*, 2004 ME 77, 850 A.2d 346, we conclude that Kevin's appeal is not moot.

### B. Commitment Hearing Requirements

[¶ 6] Kevin contends that the court erred when it concluded that it could decide the hospital's petition having received the testimony of only one of the two psychologists previously appointed by the court to examine him. We review the District Court's interpretation of the involuntary commitment statute for errors of law. *In re Marcial O.*, 1999 ME 64, ¶ 25, 728 A.2d 158, 163.

[¶ 7] The statute governs examinations by licensed physicians and licensed clinical psychologists, and it provides that when an application for involuntary commitment is received, "the court shall cause the person to be examined by 2 examiners." 34–B M.R.S.A. § 3864(4)(A). The same section governing examinations provides that "[i]f the report of the examiners is to the effect that the person is mentally ill or poses a likelihood of serious harm, [a] hearing

---

1. Spring Harbor Hospital is a nonstate mental health institution that is authorized to receive involuntarily committed patients. 34–B M.R.S.A. § 3861(1) (Pamph.2003); *Geary v. Dep't of Behavioral & Developmental Servs.*, 2003 ME 151, ¶ 2, 838 A.2d 1162, 1163.

2. Section 3864(4)(A) requires "the person to be examined by 2 examiners" after an application for involuntary commitment is filed with the court. 34–B M.R.S.A. § 3864(4)(A) (Pamph.2003). If both examiners determine that the person "is mentally ill or poses a likelihood of serious harm, the hearing shall be held." 34–B M.R.S.A. § 3864(4)(D) (1988).

shall be held." *Id.* § 3864(4)(D). If the examiners conclude "that the person is not mentally ill or does not pose a likelihood of serious harm," then the court will discharge the application. 34–B M.R.S.A. § 3864(4)(C) (1988).

[¶ 8] A separate subsection of the involuntary commitment statute sets forth the requirements for the hearing and provides that the "court shall receive all relevant and material evidence which may be offered in accordance with accepted rules of evidence and accepted judicial dispositions." 34–B M.R.S.A. § 3864(5)(C) (1988). It also states that the "person, the applicant and all other persons to whom notice is required to be sent shall be afforded an opportunity to appear at the hearing to testify and to present and cross-examine witnesses." *Id.* § 3864(5)(C)(1). "The court may, in its discretion, receive the testimony of any other person and may subpoena any witness." *Id.* § 3864(5)(C)(2).

[¶ 9] Contrary to Kevin's contention, there is no language in section 3864(5)(C) that can be construed to expressly or implicitly require that both of the examiners appointed pursuant to section 3864(4)(A) testify at the hearing. Although both examiners are subject to being called to testify at the hearing, the statute does not mandate that both testify as a prerequisite to a court's determination that the requirements for commitment have been established. Accordingly, the District Court did not err by ordering Kevin's commitment where only one of two examiners testified at the hearing.

[¶ 10] Kevin also contends that the failure to have both examiners testify at the involuntary commitment hearing violates his due process rights. Because we conclude that there is no statutory right to have a hearing where two examiners are present to testify, any right to such a hearing must be found within the due process clause of the constitution. *See Geary v. Dep't of Behavioral & Developmental Servs.*, 2003 ME 151, ¶ 18, 838 A.2d 1162, 1166. We look to three factors to determine whether the hearing comported with due process requirements: (1) the private interest affected; (2) the risk of error inherent in the procedure; and (3) the government interest in the procedure. *Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶ 18, 750 A.2d 1265, 1271–72. Balancing these three factors, we conclude that Kevin's commitment hearing did not violate his right to due process.

[¶ 11] Both the private and governmental interests in an involuntary commitment proceeding are substantial. Kevin has a fundamental liberty interest at stake, including the right to not be involuntarily confined "merely for idiosyncratic behavior," *Green,* 2000 ME 92, ¶ 19, 750 A.2d at 1272, or based on insufficient evidence. The governmental interest in the proceeding is also important because the commitment process is intended to protect the individual who is the subject of the proceeding, as well as the public, from harm. *See id.* ¶ 20, 750 A.2d at 1272.

[¶ 12] Because of the importance of both the individual and governmental interests in an involuntary commitment proceeding, the process employed must also be substantial in order to ensure that risk of error associated with a commitment determination is low. The statute mandates that "relevant and material evidence" must be admitted to prove that the individual is mentally ill, "poses a likelihood of serious harm … [and that] inpatient hospitalization is the best available means for the treatment of the person." 34–B M.R.S.A. § 3864(5)(C), (E). The statute also requires proof of the elements supporting an

involuntary commitment by the heightened standard of clear and convincing evidence. 34–B M.R.S.A. § 3864(6)(A)(1) (Pamph. 2003). In addition, the individual who is the subject of the proceeding is represented by counsel and has the right to request the court to compel the attendance of witnesses, including both of the examiners, at the hearing. *See* 34–B §§ 3864(5)(C)(2), 3864(5)(D).

[¶ 13] The procedural safeguards associated with the involuntary commitment hearing process are commensurate with the substantial private and public interests at issue. Mandating that both examiners testify at the hearing as a prerequisite to a commitment determination would not significantly reduce the risk of error. Indeed, in some instances it would foster the presentation of cumulative evidence and serve as a potential source for delay in the timely completion of the commitment process. Here, for example, the court received both expert and lay testimony concerning Kevin's psychiatric condition and needs.[3] Kevin does not suggest that if Dr. Smith had testified at the hearing the testimony would have provided the court with an expert opinion substantially different from Dr. Leone's opinion, or that the testimony would have resulted in a different outcome. Nor does Kevin cite to any impediment in his right to have requested the court to compel Dr. Smith's appearance at the hearing if he had so elected. Accordingly, we conclude that Kevin's due process rights were not violated by the process authorized by the involuntary commitment statute.

## C. Sufficiency of the Evidence

[¶ 14] Kevin also contends that Spring Harbor did not prove by clear and convincing evidence the elements required for an involuntary commitment.[4] We disagree. The court could have reasonably been persuaded by the testimony of Dr. Leone and Dr. Ray that the findings required for an involuntary commitment were highly probable. *See In re Charles G.*, 2001 ME 3, ¶ 5, 763 A.2d 1163, 1165–66. Dr. Leone and Dr. Ray testified that Kevin suffers from schizoaffective disorder and must be on medication to prevent "decompensation" whereby he experiences disorganized thought processes that escalate into paranoid and delusional thinking. Kevin had refused to take his medication and meet with his psychiatrist, and without proper medical care he was incapable of protecting himself from harm or caring for himself in a safe manner. The record amply supports the court's conclusion that it was highly probable that additional hospitalization was required to assure that Kevin was properly medicated before he resumed his residence at Shalom House.

The entry is:

Judgment affirmed.

---

**3.** The court considered the testimony of one of the two licensed clinical psychologists who conducted the preliminary examinations, as well as the testimony of Kevin's treating physician at Spring Harbor Hospital, and Kevin himself.

**4.** The statute provides that a court may order commitment if it finds:

  (1) Clear and convincing evidence that the person is mentally ill and that the person's recent actions and behavior demonstrate that the person's illness poses a likelihood of serious harm;

  (2) That inpatient hospitalization is the best available means for treatment of the patient; and

  (3) That it is satisfied with the individual treatment plan offered by the hospital to which the applicant seeks the patient's involuntary commitment.

34–B M.R.S.A. § 3864(6)(A) (Pamph.2003).