2004 ME 77

**In re WALTER R.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 27, 2004.

Decided: June 11, 2004.

Rubin G. Segal, Portland, for appellant.

Beth Dobson, Valerie A. Wright, Verrill & Dana, LLP, Portland, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Walter R. appeals a judgment entered in the District Court (Portland, *Beaudoin, J.*) involuntarily committing him to Spring Harbor Hospital, a mental health facility. Although neither Walter nor Spring Harbor raised the issue of mootness, we explore it because Walter's term of commitment expired while this appeal was pending. Walter argues that his rights pursuant to 34-B M.R.S.A. § 3864(5)(C)(1) (1988) were violated when the court failed to dismiss the commitment proceeding even though one of the appointed mental health examiners did not appear at the hearing. He also contends that the court erred by allowing a physician's assistant to testify as a psychiatric expert. Walter further claims that the evidence was insufficient for an involuntary commitment and that the flaws in the hearing amounted to a violation of his due process rights. We conclude that the appeal is not moot, and we affirm the judgment.

## I. BACKGROUND AND PROCEDURE

[¶ 2] An application for the emergency involuntary hospitalization of Walter was endorsed by a justice of the peace, *see* 34-B M.R.S.A. § 3863(3) (Pamph. 2003), and five days thereafter the chief administrative officer of Spring Harbor Hospital filed an application for the involuntary hospitalization of Walter, *see id.* § 3863(5)(B). The court set a hearing date and appointed counsel for Walter. The court also ordered that Walter be examined by two examiners, Dr. Smith and Dr. Leone, both licensed psychologists. *See id.* § 3864(4)(A).

[¶ 3] The hearing took place on October 30, 2003. Dr. Leone testified, and her evaluation report was admitted without objection. She gave Walter's lengthy history of mental illness, and she reported that he was refusing his medication. She diagnosed him as having schizophrenia, paranoid type. Although he had an apartment, he had been living on the streets and believed the soup kitchen was trying to poison him. While at the hospital he also believed his food was poisoned, and he ate only about half of his meals. He was refusing to speak with his doctor. He was consumed with his psychosis. Dr. Leone noted an incident in 2002 when Walter, during a psychotic episode, made threats with a gun. Dr. Leone reported that without medication Walter is not able to take care of himself and protect himself from harm. However, with medication he can be functional in the community.

[¶ 4] Walter objected to the admission of Dr. Smith's evaluation report because the doctor was not available for cross-examination, and the court sustained the objection.

[¶ 5] The hospital presented Timothy Grace, a physician's assistant, who had been assigned to treat Walter. Over Walter's objection, the court allowed Grace to testify and present "expert psychiatric testimony," which testimony is required by 34-B M.R.S.A. § 3864(5)(F) (Pamph. 2003). Grace testified about Walter's behavior at Spring Harbor and the medications that had been administered to Walter in the past. He also described the proposed treatment plan, which required Walter to agree to take his medications, and once Walter is stabilized on the medications, he would be discharged. Grace also described the possibility that, if Walter continued to refuse to take his medi-

cations, further hospitalization may be necessary.

[¶ 6] Walter testified that he was not mentally ill and that he was taking some medications. He also stated that he was being medicated involuntarily in that medication was placed in his food and that he was given injections at night. He admitted to a history of suicide attempts.

[¶ 7] At the conclusion of the hearing, the court found that Walter was mentally ill and because of his illness posed a likelihood of serious harm. The court found that Spring Harbor had proven, "by clear and convincing evidence, that [Walter] suffers from schizophrenia, is symptomatic as reflected in the exhibits and testimony, presents a likelihood of serious harm to himself and others, is in need of hospitalization, and that the treatment plan offered by the hospital is satisfactory." The court ordered Walter committed to Spring Harbor for a period not to exceed four months.

## II. DISCUSSION

### A. Mootness

■ [¶ 8] It is now more than four months since the date of Walter's commitment on October 30, 2003. By statute, *id.* § 3864(7), and by the terms of the commitment order, Walter's commitment could not exceed four months without further hearing, and, therefore, the order has expired. Walter's appeal did not stay the execution of the commitment order. 34–B M.R.S.A. § 3864(11)(C) (1988). Although the parties have not raised the issue of mootness, we do so sua sponte.

■ [¶ 9] Because the term of Walter's involuntary commitment has expired, his appeal should be dismissed as moot unless one of the exceptions to the moot-

ness doctrine is present. The collateral consequences exception allows the review of a controversy where sufficient collateral consequences result from the appealed matter so as to justify relief. *State v. Jordan,* 1998 ME 174, ¶ 10, 716 A.2d 1004, 1006. The public interest exception permits questions of great public interest to be addressed to guide the bar and public. *Young v. Young,* 2002 ME 167, ¶¶ 8–9, 810 A.2d 418, 421–22. A third exception allows the review of matters that are repeatedly presented to trial courts, but they are of such short duration that they escape appellate review. *In re Marcial O.,* 1999 ME 64, ¶¶ 9–10, 12, 728 A.2d 158, 161. Walter's appeal comes within the collateral consequences and public interest exceptions.

■ [¶ 10] For criminal cases, the collateral consequences of a conviction are presumed in the mootness analysis, and the appeal of a criminal defendant from a conviction is reviewable even though the defendant has fully served the sentence. *Jordan,* 1998 ME 174, ¶¶ 12–13, 716 A.2d at 1007. Involuntary hospitalization commitments are similar to criminal convictions in that they not only result in a loss of liberty but they also carry collateral consequences. One collateral consequence of Walter's involuntary commitment hearing is the fact that if he faces a second commitment proceeding, the term of commitment will be up to one year. 34–B M.R.S.A. § 3864(7) (Pamph. 2003). Given the evidence of Walter's history of mental illness in this record, the possibility that he will face another mental health proceeding is not remote. Another consequence of the commitment order is the prohibition against possessing a firearm. 18 U.S.C.A. § 922(g)(4) (2000).[1]

---

1. Section 922(g) states:

It shall be unlawful for any person ... who has been adjudicated as a mental defective

[¶ 11] We did not recite the collateral consequences of an involuntary commitment to a mental health hospital in *In .re Faucher*, 558 A.2d 705 (Me.1989), and there we declined to apply· a mootness exception to Faucher's appeal from his involuntary commitment. Because the *Faucher* case did not consider the specific consequences and simply concluded that no collateral consequences of significance were presented, we will not apply its holding to Walter's appeal.[2] We are satisfied that there are sufficient collateral consequences that can result from Walter's commitment that we should not dismiss his appeal· as moot.

■■ [¶ 12] Walter's appeal also comes within the public interest exception. To determine whether an issue is important enough to come within this exception to mootness, we consider whether the issue is private or public; whether court officials need an authoritative decision for future proceedings; and the likelihood of the issue repeating itself in the future. *Young,* 2002 ME 167, ¶ 9, 810 A.2d at 422. The issues in this appeal are public issues because the State's interest in protecting the mentally ill is a public concern. *See id.* We know that one of the issues is repeated because we have another case, *In re Kevin C.,* 2004 ME 76, 850 A.2d 341, decided today, which presents the very same issue; that is, whether the committed person's rights under the Maine statutes and the due process clause are violated when one of the appointed examiners is not present at the hearing. An authoritative determination on this issue as well as the issue of whether a.physician's assistant is disqualified, as a matter of law, to present expert psychiatric testimony will assist the bench and bar in future cases.[3] Thus, Walter's appeal meets the criteria of the public interest mootness exception.

### B. Unavailability of Examiner

■ [¶ 13] Walter.argues that the court should have dismissed Spring Harbor's application for, involuntary commitment because of the unavailability of Dr. Smith, one of the examining psychologists, at the commitment .hearing. Walter argues that both the statutory scheme and the due process, clause require both examining psychologists to be present at the hearing. We decided this issue today in *In re Kevin C.,* 2004 ME 76, 850 A.2d 341. The District Court did not violate 34–B M.R.S.A. § 3864(5)(C)(1) by ordering Walter to be committed in spite of the nonappearance of one .of the, appointed examiners, nor were Walter's due process rights violated.

### C. Expert Psychiatric Testimony

■ [¶ 14] The statutory scheme required Spring Harbor to submit an individual treatment plan for Walter, "including expert psychiatric testimony." 34–B

or who has been committed to a mental institution ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. Likewise, *Leigh v. Superintendent, Augusta Mental Health Inst.,* 2003 ME 22, 817 A.2d 881, is distinguishable from the present appeal in that the precise collateral consequences were not discussed, and *Leigh* was an appeal from the denial of a habeas corpus petition brought after Leigh was found incompetent to stand·trial and involuntarily hospitalized. *Id.* ¶¶ 1, 3, 8, 817 A.2d at 882–84.

3. This case raises more than just an evidentiary issue particular to it, which distinguishes this case from the *Faucher* case. *See In re Marcial O.,* 1999 ME 64, ¶ 12, 728 A.2d 158, 161 (distinguishing *Faucher* on the ground · that *Faucher* raised only an evidentiary issue peculiar to it).

M.R.S.A. § 3864(5)(F). Spring Harbor attempted to meet this requirement by calling Grace, a physician's assistant, to testify. Grace testified that (1) he held a master's degree in physician assistant studies; (2) he was licensed by the State of Maine; (3) he had been employed by Spring Harbor for two years; (4) his caseload ranged from four to twelve patients; (5) he worked under the supervision of a psychiatrist; (6) he had the ability to diagnose mental illness; and (7) he had the authority to prescribe certain medications including antipsychotic drugs. Walter objected that the physician's assistant was not qualified to give expert psychiatric testimony, but the court disagreed and allowed Grace's testimony.

[¶ 15] Walter's objection to Grace's testimony is that it was not "expert psychiatric testimony" as that term is used in section 3864(5)(F).[4] The statute does not define the term "expert psychiatric testimony." Therefore, we take it in its ordinary, common meaning, that is, an expert who can present psychiatric testimony. "Psychiatric" is an adjective used to describe "the branch of medicine concerned with the study, treatment, and prevention of disorders of the mind, including psychoses and neuroses, emotional maladjustments, etc." WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1147 (2d ed. 1980).

[¶ 16] The term "expert psychiatric testimony" encompasses the testimony of an expert who has psychiatric experience for the purpose of presenting and describing the treatment plan for the individual who is the subject of the commitment proceeding. Grace's qualifications demonstrate that he was educated, trained, and licensed; that he worked under the supervision of a psychiatrist in a mental health facility; that he was experienced in treating psychiatric patients; and that he was familiar with medications given to patients. The statute does not demand more. Had the drafters of the statute intended to require the testimony of a psychiatrist, they would have chosen different words. We conclude that the statute does not limit "expert psychiatric testimony" to that of a psychiatrist. When a physician's assistant, such as Grace, has the appropriate training, licensure, and experience, a court does not err in admitting the assistant's testimony to fulfill the "expert psychiatric testimony" requirement. Furthermore, we see no due process violation by allowing a physician's assistant rather than a psychiatrist to provide the statutorily required "expert psychiatric testimony."

## D. Sufficiency of the Evidence

[¶ 17] The court found by clear and convincing evidence that Walter was mentally ill and "because of [his] illness poses a likelihood of serious harm." *See* 34–B M.R.S.A. § 3864(6)(A)(1) (Pamph. 2003). When the burden of proof is clear and convincing evidence, we review the trial court's findings to determine "whether the fact-finder reasonably could have been persuaded that the required findings were proved to be highly probable." *Spooner v. Spooner*, 2004 ME 69, ¶ 30, 850 A.2d 354, 363.

---

4. Walter is not arguing that the court abused its discretion in allowing Grace to testify as an expert pursuant to M.R. Evid. 702. We have affirmed a trial court's determination that a physician's assistant was qualified to give expert testimony where the witness had completed his education and state licensing requirements and where the medical procedure was routine and frequent. *State v. Tibbetts*, 572 A.2d 142, 143 (Me.1990). Grace's testimony suggested that he routinely and frequently implemented psychiatric treatment plans.

[¶ 18] Walter argues that without the testimony of the second examiner, the required findings of mental illness and likelihood of serious harm were not highly probable. However, the court could have been persuaded that it was highly probable that Walter was mentally ill and that his illness posed a likelihood of serious harm from the testimony and report of Dr. Leone alone. The additional testimony by Grace and Walter supported Dr. Leone's observations and expert opinion. The evidence was sufficient to meet the clear and convincing standard of proof.

The entry is:

Judgment affirmed.