MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 99
Docket:        Kno-19-385
Submitted
  On Briefs:   June 25, 2020
Decided:       July 16, 2020

Panel:         MEAD, GORMAN, HUMPHREY, HORTON, and CONNORS, JJ.

IN RE INVOLUNTARY COMMITMENT OF M.


HORTON, J.

[¶1]  M. appeals from a judgment of the Superior Court (Knox County, *Mallonee, J.*) affirming the order of the District Court (Rockland, *Sparaco, D.C.J.*) committing M. to involuntary hospitalization for up to 120 days. *See* 34-B M.R.S. § 3864 (2020).  M. argues that the absence of a complete transcript of the commitment hearing deprives her of due process and that the court's findings are not supported by evidence in the record.[1]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In March 2019, the Department of Health and Human Services filed a petition for M.'s involuntary commitment to a psychiatric hospital. *See* 34-B M.R.S. §§ 3863(5-A)(B), 3864(1) (2020).  The court appointed counsel for M. and, on April 8, 2019, held a hearing on the petition.  At M.'s request, the

---

[1]  We conclude that the remaining arguments in M.'s briefs are unpersuasive, and we do not address them in this opinion.

court held the hearing at Penobscot Bay Medical Center, where she was receiving treatment. *See id.* § 3864(5)(B). The court arranged for the audio of the hearing to be transmitted simultaneously by telephone to the courthouse, where the audio of the proceeding was recorded using the court's electronic recording system. *See id.* § 3864(5)(G).

[¶3] During the hearing, M.'s treating physician and the court-appointed psychiatric examiner testified in support of the Department's petition. *See id.* § 3864(5)(F). The examiner also prepared a written report based on her interview with M. *See id.* § 3864(4). M. testified against an involuntary commitment.

[¶4] At the conclusion of the hearing, the court found, by clear and convincing evidence, that (1) M. is mentally ill and that her mental illness poses a "[l]ikelihood of serious harm," as that term is defined in 34-B M.R.S. § 3801(4-A) (2020); (2) there are no adequate community resources for M.'s care and treatment; (3) inpatient hospitalization is the best available means for M.'s treatment; and (4) the Department had presented a satisfactory individual treatment plan. *See id.* § 3864(6)(A). Based on these findings, the court authorized M.'s hospitalization for up to 120 days. *See id.* § 3864(7).

[¶5]  M. filed a timely appeal to the Superior Court.  *See id.* § 3864(11); 4 M.R.S. § 105(3)(B)(4) (2020); M.R. Civ. P. 76D.  When the transcript of the hearing was filed, it contained many instances of the word "indiscernible" in parentheses, indicating that the transcriber could not determine from the recording what words were spoken.[2]  M. did not move to rectify the indiscernible portions of the transcript, despite the existence of procedural rules for doing so.  *See* M.R. Civ. P. 76F(b), 76H(e)(4).

[¶6]  The Superior Court (*Mallonee, J.*) affirmed the District Court's (*Sparaco, D.C.J.*) judgment, and M. timely appealed to us, *see* M.R. App. P. 2B(c)(1).

[¶7]  Given the numerous indiscernible words and phrases in the audio recording and the transcript, we *sua sponte* ordered the parties to prepare a statement of the evidence pursuant to M.R. App. P. 5(d).  Our order had the stated purpose of "improv[ing] the completeness and accuracy of the District Court record to the maximum extent possible."  We expressly permitted the parties, as necessary, to "use the existing transcript as a source of information,"

---

[2]  We have reviewed the audio recording from which the transcript was created.  Our review confirms that the transcriber accurately transcribed the words that can be discerned from the recording.  It is apparent that the recording itself failed to capture certain words that were spoken at the hearing, likely because the proceeding was being recorded over the telephone.  The omissions in the transcript consist of words and occasional phrases, but not lengthy portions of testimony.

4

"obtain information from witnesses or others present at the hearing," and "consult with the District Court itself."

[¶8] The parties submitted a Rule 5(d) statement to the District Court. *See* M.R. App. P. 5(d)(3). This statement was slightly more than one page in length and summarized the testimony at the hearing in three short paragraphs, without attempting to address or clarify any of the indiscernible portions of the audio recording and transcript. The court approved the statement, and it became part of the record on appeal. *See id.* M. did not object to the statement of the evidence approved by the court, and M. does not argue on appeal that the statement is deficient or inaccurate.

## II. DISCUSSION

[¶9] M. argues that the State's inability to provide a complete transcript of her commitment hearing deprives her of due process and that the record contains insufficient evidence to support the court's findings. Before reaching these contentions, we consider whether M.'s appeal is moot given that she is no longer subject to involuntary commitment pursuant to the order she challenges on appeal.

A.    Mootness

[¶10]   The court authorized M.'s involuntary commitment for up to 120 days, beginning on April 8, 2019.  Therefore, the order expired no later than August 6, 2019, and we must dismiss M.'s appeal as moot unless an exception to the mootness doctrine applies.  *Cf. In re Steven L.*, 2014 ME 1, ¶¶ 5-9, 86 A.3d 5 (dismissing an appeal from an order of admission to a progressive treatment program because the order had expired and no mootness exception applied).

[¶11]   Our mootness doctrine is well established in the context of involuntary commitment proceedings:

> Because the term of [M.'s] involuntary commitment has expired, [her] appeal should be dismissed as moot unless one of the exceptions to the mootness doctrine is present.  The collateral consequences exception allows the review of a controversy where sufficient collateral consequences result from the appealed matter so as to justify relief.  The public interest exception permits questions of great public interest to be addressed to guide the bar and public.  A third exception allows the review of matters that are repeatedly presented to trial courts, but they are of such short duration that they escape appellate review.

*In re Walter R.*, 2004 ME 77, ¶ 9, 850 A.2d 346 (citations omitted).

[¶12]   When the court determines that an order of involuntary commitment is warranted, it "may order commitment to a psychiatric hospital for a period not to exceed 4 months in the first instance and not to exceed

6

one year after the first and all subsequent hearings."  34-B M.R.S. § 3864(7).

Accordingly, there is a significant collateral consequence that results from an

individual's *first* involuntary commitment pursuant to section 3864, and we

will reach the merits of M.'s appeal, even though the court's order has expired,

if this is M.'s first time being subjected to involuntary hospitalization.  *See In re

Walter R.*, 2004 ME 77, ¶¶ 9-11, 850 A.2d 346.

[¶13]  There is some evidence in the record suggesting that M. was

hospitalized about thirty-three years ago.  However, the Department did not

seek to have M. committed for more than four months, and the court stated at

the end of the hearing that it "will authorize the 120 days.  *That's the maximum

without coming back to court.*"  (Emphasis added.)  Implicit in the court's

statement is a finding that M. has not previously been subject to involuntary

commitment.  Based on the record before it—which contained only cursory

references to any previous instances of M.'s hospitalization—the court's finding

is not clearly erroneous.  We defer to that finding, *see Gould v. A-1 Auto, Inc.*,

2008 ME 65, ¶ 6, 945 A.2d 1225, and we will reach the merits of M.'s appeal

pursuant to the collateral consequences exception, *see In re Walter R.*,

2004 ME 77, ¶¶ 9-11, 850 A.2d 346.

B.     Due Process

[¶14]  M. argues that she has been denied due process and a fair appeal because there is no verbatim transcript of her commitment hearing.

[¶15]  The absence of a complete and accurate transcript of trial court proceedings creates the risk of an erroneous deprivation of life, liberty, or property because an appellate court may be unable to recognize prejudicial error in the trial court's procedure or decision without the benefit of a complete record.  Accordingly, the absence of a complete transcript implicates due process.  *See generally Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976) (reviewing procedural due process considerations); *State v. Milliken*, 2010 ME 1, ¶¶ 12-17, 985 A.2d 1152 (discussing due process in the context of a challenge to the State's failure to provide a complete transcript for appeal).

[¶16]  In this instance, the gaps in the transcript result from the muffled audio recording of the commitment hearing.[3]  For example, the transcript

---

[3] The Legislature has mandated that "[a] stenographic or electronic record must be made of the proceedings in all judicial hospitalization hearings."  34-B M.R.S. § 3864(5)(G) (2020).  The production of an intelligible stenographic or electronic record is vital to informed appellate review, especially in light of the important liberty interests at stake in commitment proceedings.  *See In re Kevin C.*, 2004 ME 76, ¶ 11, 850 A.2d 341.  It is the trial court's responsibility to ensure that such hearings are recorded in a manner that results in an intelligible record.  *See* M.R. Civ. P. 76H(b)(3) ("At all times, the operation of the recording equipment shall be subject to the direction and order of the court . . . .").

8

contains the following exchange between the Department's attorney and the

court-appointed psychiatric examiner:

> Q: [M.'s treating physician] recommended (indiscernible) does approve the application?
>
> A: I think [M.'s treating physician] may be sensible for the patient in terms of the way that I understand it. I'm involved in getting to people. I haven't—I did not see any implication of (indiscernible) to engage in treatment.
>
> Q: (Indiscernible). I'm suggesting also, if there was a referral to (indiscernible). What is your recommendation for today as far as the recommended plan (indiscernible).
>
> A: (Indiscernible).
>
> Q: Are there any other aspects (indiscernible) your recommendation today?
>
> A: (Indiscernible).

[¶17] These and other shortcomings in the transcript do not, in and of

themselves, however, establish a violation of M.'s right to due process. A litigant

is not denied due process if she fails to take advantage of available procedural

mechanisms that are designed to protect against an erroneous deprivation of

life, liberty, or property. *See In re A.M.*, 2012 ME 118, ¶¶ 23-27, 55 A.3d 463

(concluding that a parent was not denied due process by her inability to attend

a termination of parental rights hearing given that "[s]he made no effort to seek

relief through [other] means" despite "the availability of procedural

mechanisms designed to safeguard [her] right[s]"); *see also Putnam v. Albee*, 1999 ME 44, ¶ 8, 726 A.2d 217 ("[T]he inability of a party to obtain a transcript may be a proper basis for vacating a judgment. Such relief, however, will only be appropriate when the appellant has diligently pursued [her] rights." (citation omitted)).

[¶18]  The Rules of Civil Procedure provide for the correction of errors or omissions in the District Court record for purposes of an intermediate appeal to the Superior Court. *See* M.R. Civ. P. 76F(b), 76H(e)(4). However, M. did not file a motion to amend or supplement the record. Had she done so, the parties could have taken steps to create a more complete record of the District Court proceedings immediately after the transcript was filed.

[¶19]  Furthermore, even after we ordered the parties to prepare and submit a statement of the evidence pursuant to M.R. App. P. 5(d), the statement submitted by the parties did nothing to remedy the gaps in the transcript. With regard to substantive evidence offered at the hearing, the parties' Rule 5(d) statement says only the following:

> 5. [M.'s treating physician] testified in support of the [Department's] petition for [M.'s] involuntary commitment. He testified that [M.] had been irritable while in the hospital and was frequently disrespectful, demanding, and argumentative. [He] testified that [M.] was somewhat composed on the date of hearing and was not as demanding as she had been on other days.

10

6. Both [M.'s treating physician] and [the court-appointed psychiatric examiner] testified in support of involuntary commitment for a period not to exceed 120 days due to [M.'s] inability to safely care for herself. They agreed that [M.] needed to be transferred to a state hospital in order to receive medications involuntarily.

7. [M.] testified in opposition to the [Department's] petition and explained that she was suffering anxiety due to the recent loss of her father rather than a mental illness that warranted involuntary hospitalization.

[¶20] When omissions or gaps in the record on appeal make a Rule 5(d) statement of the evidence necessary, the statement must address those omissions or gaps in order to be useful to our appellate review. *Cf. Springer v. Springer*, 2009 ME 118, ¶ 9 n.5, 984 A.2d 828 ("Determination of the extent of the record needed on appeal must necessarily depend on the nature of the issues raised on appeal."). Thus, we described an example of a useful Rule 5(d) statement in *Cates v. Donahue*:

[The appellant] filed a statement of the evidence with separately numbered paragraphs *indicating each relevant point about which* [*the witnesses*] *had testified*. The court reviewed [this] statement of the evidence, made some modifications and additions to it based on its recollection of the proceedings, and approved the statement as modified to become the record of the proceedings pursuant to M.R. App. P. 5(d).

2007 ME 38, ¶ 2, 916 A.2d 941 (emphasis added).

[¶21]   Augmenting an incomplete trial court record will often be a challenging task.   *See Springer*, 2009 ME 118, ¶¶ 6-7, 984 A.2d 828. Accordingly, M.R. App. P. 5(d)(1) permits an appellant to create a statement of the evidence "from the best available means."   In this case, we expressly authorized the parties to use the existing transcript as a source of information and to confer with witnesses, the court, and trial counsel as necessary.   We are therefore confident that the Rule 5(d) statement in this instance could at least have "indicat[ed] each relevant point about which [the witnesses] had testified."[4]  *Cates*, 2007 ME 38, ¶ 2, 916 A.2d 941.

[¶22]   Based on the foregoing, we must conclude that M. has not been denied due process.   As the appellant, M. has the burden to ensure that an adequate record exists for appeal. *See Milliken*, 2010 ME 1, ¶ 12, 985 A.2d 1152. Although M. is not responsible for the omissions in the audio recording and the transcript, she did not avail herself of the opportunity, either in the Superior Court or here, to rectify them.   When we ordered the parties to submit a statement of the evidence to "improve the completeness and accuracy of the

---

[4]  Although the burden to generate an adequate Rule 5(d) statement rests with the appellant, *see* M.R. App. P. 5(d)(1), the District Court would have been justified in rejecting the parties' submission and requiring them to prepare a more comprehensive statement of the evidence. *See* M.R. App. P. 5(d)(3) (stating that a Rule 5(d) statement must be "settled *and approved*" by the trial court (emphasis added)).

12

District Court record to the maximum extent possible," M. participated in the creation of, and did not object to, a statement that does not serve its purpose. The opportunities afforded to M. to supplement the incomplete transcript were sufficient to satisfy due process.[5]  *See In re A.M.*, 2012 ME 118, ¶¶ 23-27, 55 A.3d 463.

C.     Sufficiency of the Evidence

[¶23]  Lastly, M. argues that the evidence at the hearing was not sufficient for the court to make the statutorily-required findings for an involuntary commitment.  *See* 34-B M.R.S. § 3864(6)(A).

[¶24]  "When the Superior Court acts as an intermediate appellate tribunal, we directly review the judgment of the District Court to determine whether that decision contains any error of law that affects the validity of the judgment."  *In re Christopher H.*, 2011 ME 13, ¶ 6, 12 A.3d 64 (alteration omitted) (quotation marks omitted).

---

[5]  Additionally, even if M. had not been given several opportunities to supplement the record, she would still bear the burden on appeal of showing that she suffered prejudice from the lack of a complete transcript.  *See State v. Milliken*, 2010 ME 1, ¶ 15, 985 A.2d 1152.  Because the Rule 5(d) statement does not clarify what was said in the indiscernible portions of the audio recording, and because the record before us contains sufficient evidence to support the court's findings and conclusions, *see infra* ¶¶ 23-33, we also conclude that M. has not been prejudiced by the absence of a complete transcript.

[¶25] The District Court may order a person's involuntary commitment upon making the findings required by subsection 3864(6). *See* 34-B M.R.S. § 3864(7). Title 34-B M.R.S. § 3864(6)(A) provides,

> The District Court shall so state in the record, if it finds upon completion of the hearing and consideration of the record:
>
> **(1)** Clear and convincing evidence that the person is mentally ill and that the person's recent actions and behavior demonstrate that the person's illness poses a likelihood of serious harm;
>
> **(1-A)** That adequate community resources for care and treatment of the person's mental illness are unavailable;
>
> **(2)** That inpatient hospitalization is the best available means for treatment of the patient; and
>
> **(3)** That it is satisfied with the individual treatment plan offered by the psychiatric hospital to which the applicant seeks the patient's involuntary commitment.

[¶26] To issue an order of involuntary commitment, the court must find all these facts by clear and convincing evidence. *See In re Henry B.*, 2017 ME 72, ¶ 19, 159 A.3d 824. Clear and convincing evidence exists where "the court could reasonably have been persuaded that the required factual findings were proved to be highly probable." *In re Child of Sherri Y.*, 2019 ME 162, ¶ 5, 221 A.3d 120 (quotation marks omitted). When the court makes findings pursuant to the standard of clear and convincing evidence, we will "uphold the

findings so long as any competent record evidence supports them." *In re Child of Jessica C.*, 2020 ME 63, ¶ 6, --- A.3d ---.

        1.     Mental Illness and Likelihood of Serious Harm

[¶27]  The court supportably found that M. suffers from a mental illness, and M. does not suggest otherwise.  She argues instead that the record contains no evidence from which the court could have found that M.'s "recent actions and behavior demonstrate that [her] illness poses a likelihood of serious harm." 34-B M.R.S. § 3864(6)(A)(1).

[¶28]  As used in section 3864, a "likelihood of serious harm" means

> **A.**  A substantial risk of physical harm to the person as manifested by recent threats of, or attempts at, suicide or serious self-inflicted harm;
>
> **B.** A substantial risk of physical harm to other persons as manifested by recent homicidal or violent behavior or by recent conduct placing others in reasonable fear of serious physical harm; [or]
>
> **C.** A reasonable certainty that the person will suffer severe physical or mental harm as manifested by recent behavior demonstrating an inability to avoid risk or to protect the person adequately from impairment or injury.

*Id.* § 3801(4-A).

[¶29]  At the conclusion of the hearing, the court found, with support in the record, that M.'s recent hostile and confrontational behavior is caused by

her mental illness and puts her at risk of harm because she is likely to provoke others to react violently towards her. In her brief, M. asserts that the court did not find "that [her] mental illness posed a risk of harm to herself or to others, but rather that others' reactions to her behavior might cause confrontation." To the contrary, the court's finding is sufficient to support a determination that M. is "reasonabl[y] certain[] [to] suffer severe physical . . . harm" because of her "inability to avoid risk." *Id.* § 3801(4-A)(C).

[¶30] Moreover, we will infer from the record any findings necessary to support the judgment because M. did not file a motion for further findings pursuant to M.R. Civ. P. 52(b). *See McLean v. Robertson*, 2020 ME 15, ¶ 11, 225 A.3d 410. Despite the indiscernible words and phrases in the audio recording, the evidentiary record amply supports findings that M. (1) has made recent threats of suicide, *see* 34-B M.R.S. § 3801(4-A)(A), and (2) poses a substantial risk of physical harm to others based on her recent violent behavior while receiving treatment, *see id.* § 3801(4-A)(B). The court's finding that M.'s mental illness poses a likelihood of serious harm is supported by competent record evidence. *See id.* § 3864(6)(A)(1).

16

### 2. Unavailability of Adequate Community Resources and Inpatient Hospitalization as the Best Means of Treatment

[¶31]  The record also supports the court's findings that, at the time of the hearing, there were no adequate community resources for M.'s treatment and that inpatient hospitalization was the best available means for M.'s treatment.[6]  *See id.* § 3864(6)(A)(1-A)-(2).  M.'s psychiatric examiner testified that M.'s aggression toward others made her "unsafe in the regular community" and that, based on her recent behavior, it would be "very difficult to imagine outpatient treatment right now."  Similarly, M.'s physician testified that "[Penobscot Bay] [does not] have the capacity to help [M.] based on her behavior over the last two weeks."  M. was refusing to take her prescribed medications or was taking them in a dangerous manner, and both the examiner and the physician "agreed that [M.] needed to be transferred to a state hospital in order to receive medications involuntarily."  This evidence supports the court's findings that there were no adequate community resources for M.'s care and treatment and that involuntary hospitalization was the best available means for M.'s treatment.  *See id.*

---

[6] Although these are separate findings pursuant to 34-B M.R.S. § 3864(6)(A)(1-A)-(2) (2020), the evidence that supports the former finding also supports the latter finding, and vice versa.

### 3. Individual Treatment Plan

[¶32] Finally, 34-B M.R.S. § 3864(6)(A)(3) required the Department to show that it had a satisfactory individual treatment plan for M. The record makes clear that the largest obstacle to M.'s treatment was her own behavior, especially her refusal to take medications voluntarily and safely. M.'s physician testified that M. was refusing to take medication or taking her medication inconsistently and that M. could suffer from depression and become suicidal, as she was prior to being admitted to Penobscot Bay, if she did not take her medication as prescribed. Both expert witnesses testified that involuntary administration of M.'s medication was necessary to ensure her successful treatment. The court did not err in determining that admitting M. to a psychiatric hospital for the involuntary administration of her medication was a satisfactory treatment plan. *See id.* § 3864(6)(A)(3); *In re Kevin C.*, 2004 ME 76, ¶ 14, 850 A.2d 341 ("[The respondent] had refused to take his medication and meet with his psychiatrist, and without proper medical care he was incapable of protecting himself from harm or caring for himself in a safe manner. The record amply supports the court's conclusion that it was highly probable that additional hospitalization was required . . . .").

18

[¶33]  Because all of the court's findings are based on competent record evidence, we conclude that the evidence at the hearing was sufficient to support the court's decision to order M.'s involuntary hospitalization.  *See* 34-B M.R.S. § 3864(6)-(7); *In re Child of Jessica C.*, 2020 ME 63, ¶ 6, --- A.3d ---.

The entry is:

> Judgment affirmed.

---

David Paris, Esq., Bath, for appellant M.

Aaron M. Frey, Attorney General, and Margaret E. Machaiek, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Knox County Superior Court docket number AP-2019-11
FOR CLERK REFERENCE ONLY