STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-565

2005 FEB -1 P 1: 04

Brian Gasque,
      Petitioner

v.                                                    **ORDER**

Dennis King, CEO, Spring Harbor Hospital,
      Respondent

FEB 7 2005

This case comes before the Court on Respondent Dennis King and Spring

Harbor Hospital's Motion to Dismiss Petitioner Brian Gasque's application for a

writ of habeas corpus.

## FACTS

On July 20, 2004, Brian Gasque (Gasque) was notified that Spring Harbor

had filed an application in Cumberland County District Court seeking Gasque's

involuntary commitment to its psychiatric facility. Gasque immediately

contacted the District Court, and was told Attorney Rubin Segal had been

appointed to represent him at his commitment hearing. Although Gasque

immediately contacted Segal, Gasque first met his attorney August 3, 2004, the

day before his commitment hearing, and the two had limited conversations

before the hearing was held. Gasque maintains he was unprepared for the

hearing, including for the questions he was expected to answer, the information

he was required to provide, and his statutory right to chose an examiner or

expert witnesses to testify on his behalf. The District Court committed Gasque to

Spring Harbor for a period not to exceed 120 days. Gasque did not appeal this

decision.

Instead, on September 10, 2004, Gasque applied for a writ of habeas corpus under a provision of Maine's mental health hospitalization statutes, 34-B M.R.S.A. § 3804 (2004). Gasque maintained he was deprived of due process protections when he received ineffective assistance of counsel at the commitment hearing. Spring Harbor opposed Gasque's petition, arguing Gasque's right to effective counsel was not established, and was adequately protected. The issue of what standards should be used to measure effective assistance of counsel for those facing involuntary commitment to psychiatric hospitals was and is an issue of first impression in Maine.

Two days before a hearing on this issue in Superior Court, Gasque was discharged from Spring Harbor Hospital. On October 21, 2004, Spring Harbor filed this Motion to Dismiss Gasque's habeas corpus petition as moot. Gasque opposed the dismissal, arguing that the issue of whether he was afforded effective assistance of counsel at his involuntary commitment hearing falls under certain exceptions to the doctrine of mootness.

## DISCUSSION

In Maine, "courts should decline to decide issues which by virtue of . . . circumstances have lost their controversial vitality." *State v. Jordon*, 1998 ME 174, ¶ 10, 716 A.2d 1004, 1006. A case or controversy will be found moot when a court finds that not enough practical effects flow from resolving the litigation to justify the expense of limited judicial resources. *Id.* Nonetheless, even if a case is moot, the court may reach its merits if:

> (1) sufficient collateral consequences will result from the determination of
> the questions presented so as to justify relief;

(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public, the Court may address; or

(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Monroe v. Town of Gray*, 1999 ME 190, ¶ 5, 743 A.2d 1257, 1258 (citing *Halfway House v. City of Portland*, 670 A.2d 1377, 1380 (Me. 1996). The Law Court has stipulated that these three exceptions may also apply in the context of a habeas corpus petition. *Leigh v. Superintendent, AMHI*, 2003 ME 22, ¶ 7 n.9, 817 A.2d 881, 884.

Because petitioner Gasque's application for a writ of habeas corpus to secure his release is technically moot, because Spring Harbor released him, the question now becomes whether any of the three exceptions to dismissal for mootness apply.

A. Collateral Consequences.

Under the doctrine of collateral consequences, a case, although technically moot, may be reviewed "where sufficient collateral consequences result from the appealed matter so as to justify relief." *In re Walter R.*, 2004 ME 77, ¶ 9, 850 A.2d 346, 349. Thus, when a man with fourteen previous arrests was arrested, found incompetent to stand trial, and committed to AMHI, his incompetency determination was found to have no "collateral consequences" once he was released from AMHI and criminal charges were dropped, and the appeal of his habeas petition was held moot. *Leigh v. Superintendent, AMHI*, 2003 ME 22, ¶ 8 n.9, 817 A.2d 881, 884. However, the Law Court found an involuntary commitments pursuant to 34-B M.R.S.A. § 3864 were "similar to a criminal

conviction, in that they not only result in a loss of liberty, but they also carry collateral consequences." *In re Walter R.*, 2004 ME 77, ¶ 10, 850 A.2d 346, 349. One collateral consequence of the petitioner's involuntary commitment hearing "is the fact that if he faces a second commitment proceeding, the term of commitment will be up to one year." *Id.* (citing 34-B M.R.S.A.§ 3864(7)).

Here, Spring Harbor argues that the collateral consequence exception only comes into play when an underlying judgment is appealed, but not on a habeas corpus petition. Spring Harbor cites *Staples v. Sate*, for the premise that habeas relief may not be sought except when the petitioner is under some form of restraint. 274 A.2d 715 (Me. 1971)(dismissing the Maine habeas petition of prisoner incarcerated in Nevada). This is clearly not the case. *See, e.g., Lewis v. State*, 2000 ME 44, ¶ 4, 747 A.2d 1191, 1192 (finding the collateral consequences exception to mootness applied to petitioner's habeas corpus challenge to his conviction, even after he had served out his sentence and been released). Alternatively, Spring Harbor argues there are no collateral consequences to Gasque's involuntary commitment.

Gasque argues that the collateral consequences of allowing his commitment to stand are significant because statutory provisions limit a first involuntary commitment to four months, but allow subsequent commitments to extend for up to a full year.[1]

Here, the Law Court has spoken directly to the collateral consequences of involuntary commitments under 34-B M.R.S.A. § 3864, finding that the collateral

---

[1] "7. **Commitment.** Upon making the findings [for involuntary commitment], the court may order commitment to a hospital for a period not to exceed 4 months in the first instance and not to exceed one year after the first and all subsequent hearings." 34-B M.R.S.A. § 3864 (7)(Supp. 2004).

consequences exception applies when patients are subject to a longer commitment period in a second commitment proceeding.[2] *In re Walter R.,* 2004 ME 77, ¶ 10, 850 A.2d 346, 349. The Law Court also noted that, given the evidence of the patient's mental history, "the possibility that he will face another mental health proceeding is not remote." Here, Gasque faces the identical collateral consequences of a first involuntary commitment as the patient in *Walter,* and presents evidence of a decades-long mental health history, that includes several suicide attempts and shows he could easily face a commitment hearing in the future.[3]

B. Public Interest.

To determine whether an issue is important enough to fall under the public interest exception, the court will consider "whether the issue is private or public; whether court officials need an authoritative decision for future proceedings; and the likelihood of the issue repeating itself in the future." *In re Walter R.,* 2004 ME 77, ¶ 12, 850 A.2d 346, 350 (citing *Young v. Young,* 2002 ME 167, ¶ 9, 810 A.2d 418, 422).

Spring Harbor argues the issue of what constitutes effective assistance of counsel in an involuntary commitment hearing is a matter of only private interest to Gasque. Spring Harbor also argues the matter is of "marginal"

---

[2] The Law Court also noted that a commitment order subjected the patient to federal statutes forbidding him from owning firearms. *In re Walter R.,* 2004 ME 77, ¶ 10, 850 A.2d 346, 349 (citing 18 U.S.C.A. § 922(g)(4)).

[3] [Furthermore, the Law Court distinguished its recent holding in *Walter* from earlier holdings that did not consider the statutory collateral consequences of an involuntary commitment, *In re Faucher,* 558 A.2d 705 (Me. 1989) or that related to commitment under different statutes, governing competency to stand trial. *Leigh v. Superintendent, AMHI,* 2003 ME 22, ¶ 8 n.9, 817 A.2d 881, 884.]

interest to the bar, and that the issue of ineffective counsel at commitment hearings is unlikely to recur in the future.

Gasque maintains the matter is of public interest, and was expressly said to be so by the Law Court. In *In re Walter R.*, the Law Court stated issues of due process protections in an involuntary commitment hearing "are public issues because the State's interest in protecting the mentally ill is a public concern." 2004 ME 77, ¶ 12, 850 A.2d 346, 350. Gasque also maintains that an authoritative decision is needed because there is presently no case law of any kind in Maine on the issue of effective counsel in a civil commitment proceeding. Gasque also argues that the liberty interest at stake is great, and analogous to that of a criminal defendant facing incarceration. Finally, Gasque maintains that the sheer number of involuntary commitment hearings that take place in Maine every year, coupled with the active involvement of organizations like the Disability Rights Center of Maine, indicates that the issue of effective counsel at civil commitment hearings is highly likely to recur in the future.[4] This Court agrees that Gasque's petition meets the criteria for a public interest exception to the doctrine of mootness.

C. Likely to Escape Appellate Review

A third exception to the doctrine of mootness may be found when an issue "may be repeatedly presented to the trial court, yet escape appellate review because of its fleeting or indeterminate nature." *Young v. Young*, 2002 ME 167, ¶ 8, 810 A.2d 418, 422). "In order to qualify, the activity generating the issue by its very nature must be so short in duration that the issue will never be fully

---

[4] Gasque notes that attorney Rubin Segel alone was appointed by the court to represent 200 to 250 plaintiffs per year in involuntary commitment hearings. Of these, approximately 50-75 go to trial.

litigated prior to cessation or expiration of the action. *Sordyl v. Sordyl,* 1997 ME 87, ¶ 7, 692 A.2d 1386, 1387 (citation omitted). "In addition, there must be a 'reasonable expectation' or 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (citations omitted). Thus when an unwanted pregnancy was a significant factor in litigation, but was unlikely to extend throughout the time needed for appellate review, and was likely to be repeated, the litigation fell under this exception, and was not moot. *Roe v. Wade,* 410 U.S. 113, 125 (1973).

Spring Harbor argues the issue is unlikely to be repeated because Maine attorneys are effective, and to say this exception applies assumes regular, substandard performance by Maine counsel. Furthermore, Spring Harbor argues, it is unlikely that another attorney representing Gasque in future proceedings would make the same decisions as Attorney Segel.

Gasque argues correctly that the statutory four-month, and one-year limits for involuntary commitment are "fleeting," and a litigant is unlikely to have his involuntary commitment outlast the process of appellate review. Without a decision in this matter, a hospital could successfully evade appellate review of due process issues by simply discharging a committed patient at any time before a hearing. In fact, in a case decided last year, the Law Court found that a former patient's appeal of his involuntary commitment by Spring Harbor on due process grounds was not rendered moot simply because Spring Harbor discharged him on the day he filed his appeal. *In re Kevin C.,* 2004 ME 76, ¶ 5, 850 A.2d 341, 343 (finding the appeal not moot "for the reasons articulated today in *In re Walter R.*").

Also, a patient like Gasque, with an extensive history of mental illness and suicide attempts, plus limited financial resources, is likely to find himself facing involuntary commitment again with court-appointed counsel, and the issue of how much process is due to Gasque in that hearing could be critical to the legitimacy of its outcome. Because Mr. Gasque's case fits within all three exceptions to the doctrine of mootness, Respondent's Motion to Dismiss must fail.

This Court **DENIES** Respondent Dennis King and Spring Harbor Hospital's Motion to Dismiss.

Dated ___February 1, 2005___

Roland A. Cole
Justice, Superior Court

MARK JOYCE ESQ     _ P|
PO BOX 2007
AUGUSTA ME 04338-2007

DANIEL ROSENTHAL ESQ   _DM
PO BOX 586
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 JUN -6 P 3: 44

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-565

Brian Gasque,
    Petitioner



v.         JUL 18

**CLARIFICATION
OF
JUDGMENT**

Dennis King, Chief Administrative
Officer of Spring Harbor Hospital,
    Respondent

This case comes before the Court on Petitioner Brian Gasque's Motion to Amend the Judgment pursuant to M. R. Civ. P. 59(e).

## FACTS

Petitioner Brian Gasque (Petitioner) was involuntarily committed to Spring Harbor Hospital in August 2004. He applied for a writ of habeas corpus in September 2004, claiming he his right to due process was violated when he received ineffective assistance of counsel at his commitment hearing. Two days before a hearing on the petition, Spring Harbor discharged the Petitioner, and then moved to dismiss Petitioner's habeas petition as moot. On February 1, 2005, this Court denied Spring Harbor's Motion to Dismiss, finding that Petitioner's case met three of the criteria for exceptions to the doctrine of mootness. Among those exceptions is an exception for cases which are likely to repeatedly escape appellate review.

On February 18, 2005, Respondent Dennis King, CAO of Spring Harbor (Respondent), notified the Court that it accepted judgment in favor of the

Petitioner. Respondent further suggested that any remaining relief concerning effective assistance of counsel and due process in involuntary commitment matters could only be sought from the State of Maine, who was not a party to these proceedings. Because of the costs involved, Respondent informed the Court that it "would not participate further in this matter."

Respondent's notice was treated by this Court as a default, ending the case in Petitioner's favor. Respondent's Suggestion of Absence of Indispensable Party was declined, where Petitioner sought habeas relief from that involuntary commitment on the grounds that he was denied due process at his commitment hearing, relief that was fully available with existing parties. On March 15, 2005, this Court entered a judgment in favor of Petitioner in the matter of his writ of habeas corpus. That order read, in its entirety:

> Upon Respondent's Notice of Acceptance of Judgment and Suggestion of Absence of Indispensable Party, this Court hereby ORDERS that judgment be entered in favor of Petitioner against Respondent in the above-captioned matter, for the issuance of the Writ of Habeas Corpus as sought in the Petition.

On March 24, 2005, Petitioner then moved to amend that judgment to include a judgment on the merits of his due process claim of ineffective assistance of counsel in involuntary commitment proceedings. Petitioner argues that this case should be decided on its merits because this Court expressly determined Petitioner's release did not render the case moot, and because it is a matter of great public interest and importance. Petitioner further argues that a fair reading of this Court's March 15, 2005 order would be that Petitioner "as sought in the Petition" was entitled to and did not receive effective assistance of counsel at his involuntary commitment hearing in violation of his due process

2

protections, and was, therefore, entitled to habeas relief. If this is not the case, Petitioner argues, this Court should clarify the order.

Respondents argue that the case was not rendered moot by Petitioner's release, but was rendered moot by Respondent's acceptance of judgment in Petitioner's favor. Respondent concedes that Petitioner was entitled to effective assistance of counsel at his involuntary commitment hearing.

## DISCUSSION

Rule 59(e) allows a party to move to amend or alter a judgment. Pursuant to such a motion, the Court may substantively amend the original judgment in the manner requested as well as make changes or correct errors on its own initiative. *Most v. Most*, 477 A.2d 250, 259 (Me. 1984). Where the Court responds to the motion by clarifying the original order, without more, a hearing is not required. *Id.* at 261 n.13. Respondent's novel "Notice of Acceptance of Judgment" was treated by this Court as a default, and judgment was entered pursuant to M. R. Civ. P. 55, for "failure to defend as provided by these rules." M.R. Civ. P. 55(a). Although Respondent has not failed to appear or failed to file responses and meet deadlines under the rules, Respondent stated unequivocally that it "will not participate further in this matter" and a default judgment is warranted.[1]

---

[1] This Court could not treat Respondent's "Notice" as an Offer of Judgment, pursuant to Rule 68. Under the rule, before a judgment issues, an offer of judgment must be accepted by the opposing party within ten days or it "shall be deemed withdrawn." M.R. Civ. P. 68. Respondent's "Notice" cannot be treated as a stipulation of judgment in the matter. Again, the agreement and participation of the Petitioner in advance of an order would be required. A court adopting a stipulation without allowing the opposing party notice or an opportunity to challenge its validity, violates that party's right to procedural due process. *Hamill v. Bay Bridge Assoc.*, 1998 ME 181, ¶ 5, 714 A.2d 829, 831.

When a default judgment is entered against a defendant, that defendant's liability is established, and the allegations in the plaintiff's complaint are deemed to be true and become findings of fact. *McAlister v. Slosberg,* 658 A.2d 658, 660 (Me. 1995)(citations omitted).

Here the Court clarifies, for purposes of the Order, that the Petitioner's habeas petition did not assert a claim under the Sixth Amendment for the right to effective assistance of counsel. Instead, Petitioner pleads that, because of his inadequate preparation for his hearing, his due process rights, under the Fourteenth Amendment and the Maine Constitution Article I, §§ 6-A and 19, were violated at that commitment hearing.

This Court's order of March 15, 2005 should be understood to mean, first, that Petitioner was entitled to effective assistance of counsel at his involuntary commitment hearing, a conclusion that is an obvious concomitant of the statutory requirement that counsel be provided. 34-B M.R.S.A. § 3864(5)(D). This Court further finds that Petitioner is entitled to habeas relief because his due process protections were violated when, as he pleads, he was not told of his right to hire examiners and call witnesses on his own behalf, was not informed of the content of the hearing, and was not prepared to testify on a variety of matters on his own behalf. This Court declines to reach the broader question of the standards that should be used to evaluate effective assistance of counsel in civil commitment hearings, other than to note that the Maine Law Court has created high standards for adequacy of due process in all aspects of involuntary commitment hearings. *In re Kevin C.,* 2004 ME 76, 850 A.2d 341. [2]

---

[2] The Maine Law Court has held that an involuntary commitment proceeding is evaluated for adequate due process by balancing "(1) the private interest

4

This Court also finds that Petitioner, as he pleads, was improperly deprived of his liberty through involuntary commitment to Spring Harbor Hospital in violation of his due process protections and his involuntary commitment of August 4, 2004, is hereby vacated.

Date_____June 6, 2005_____          _____
                                          Justice, Superior Court

---

affected; (2) the risk of error inherent in the procedure; and (3) the government interest in the procedure." *In re Kevin C.*, 2004 ME 76, ¶ 10, 850 A.2d 341, 344 (finding the process due is "substantial in order to ensure that risk of error associated with a commitment determination is low"). *Id.* ¶ 12. The Law Court further cited Maine's statutory mandates and standards to support its conclusion that "substantial" process is required "commensurate with the substantial private and public interests at issue." *Id.* ¶ 13 (citing 34-B M.R.S.A. § 3864(5)(C),(E).

MARK JOYCE ESQ
PO BOX 2007
AUGUSTA ME 04338

DANIEL ROSENTHAL ESQ
PO BOX 586
PORTLAND ME 04112